UNITED STATES of America, Appellee,

v.

Carlos HERNANDEZ–SANTIAGO, a/k/a E.T., Defendant–Appellant.

No. 1519, Docket 95–1431.

United States Court of Appeals, Second Circuit.

Argued June 5, 1996.

Decided Aug. 9, 1996.

98

Theodore B. Heinrich, Assistant United States Attorney for the District of Connecticut, Bridgeport, Connecticut (Christopher F. Droney, United States Attorney for the District of Connecticut, New Haven, Connecticut, Joseph W. Martini, Assistant United States Attorney for the District of Connecticut, Bridgeport, Connecticut, of counsel), for appellee.

Darrell B. Fields, New York City (Henriette D. Hoffman, The Legal Aid Society, Federal Defender Division, Appeals Bureau, of counsel), for defendant-appellant.

Before NEWMAN, Chief Judge, JACOBS and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Defendant Carlos Hernandez–Santiago ("Hernandez") appeals from a judgment of conviction entered on July 20, 1995, following a jury verdict convicting him of conspiracy to distribute cocaine and cocaine base; distribution of more than five grams of cocaine base; and possession of a firearm by a convicted felon. He was sentenced in the United States District Court for the District of Connecticut (Peter C. Dorsey, *Chief Judge*) principally to a term of imprisonment of one hundred and ninety-two months, to be followed by eight years of supervised release. Defendant claims that at sentencing the district court (1) failed to make findings as to the scope of his agreement to participate in the conspiracy, as required by United States Sentencing Guidelines § 1B1.3(a)(1)(B); and (2) made an arithmetic error in calculating his adjusted offense level.

## I. BACKGROUND

In an indictment filed September 15, 1993, the government charged Hernandez with one count of conspiring to distribute and to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846; one count of possessing with intent to distribute and distributing more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The trial of Hernandez and three co-defendants began on January 18, 1994, and concluded on February 4, 1994. The jury found Hernandez guilty on all three counts with which he had been charged.

Hernandez was a member of the Green Top Posse, later known as the Clear Top Mobsters (collectively, "the gang"), a criminal enterprise that sold crack cocaine in the area of the intersection of Shelton and Hallett Streets—known to the gang members as "the block"—in Bridgeport, Connecticut.

Hernandez was a half-brother of Alexander Leon, the gang's leader, and lived on "the block" between 1991 and 1993. He was a member of the gang and participated in the distribution of crack cocaine as a street seller during this period, typically selling drugs for the gang when he needed money. Leon provided him with firearms for use in the gang's operation.

A Pre–Sentence Investigation Report ("PSR") prepared by the United States Probation Office ("USPO") found that the defendant was responsible for the distribution of 37 kilograms of cocaine base and calculated the defendant's base offense level, using the 1993 Guidelines, at 42. In making this determination, the USPO concluded that Hernandez had been involved with the gang for 21 months between 1991 and 1993 and that during that time the gang as a whole had distributed a total of 37 kilograms of crack

cocaine. The USPO then recommended adding a two-level enhancement of the base offense level due to possession of a firearm, in accordance with Sentencing Guidelines § 2D1.1(b)(1). The USPO attributed to the defendant a criminal history category of III, which yielded a Guidelines range of life imprisonment. Counsel for the defendant subsequently filed several objections to the PSR. Among these objections, the defendant disputed that the total amount of crack cocaine attributable to him is 37 kilograms of crack cocaine.

On April 6, 1994, the district court held a sentencing hearing for several non-cooperating defendants, including Hernandez. At the hearing, the court expressed the view that in determining relevant conduct under the Guidelines, it would hold a defendant responsible for sale of the amount of cocaine that "was reasonably foreseeable or understood by him to have been involved" in the conspiracy during the period of his participation. Counsel for a co-defendant argued to the court that this standard was contrary to recent amendments to Sentencing Guidelines § 1B1.3, which require the sentencing court to consider the "specific conduct" of a defendant in determining relevant conduct. The court rejected this argument, stating that it would not "segment out" a defendant but, rather, would hold him responsible "for the entire function of the conspiracy." The court concluded: "I think that [a defendant] is responsible for whatever distribution took place as long as it's foreseeable to him over the period during which he was a participant in the conspiracy."

Later in the hearing, counsel for Hernandez moved to exclude from the court's consideration the USPO's calculation that 37 kilograms of cocaine were attributable to Hernandez, contending that this calculation was based on unreliable testimony. After permitting counsel for Hernandez and other defense counsel to cross-examine cooperating witnesses who provided testimony as to drug quantity, the district court concluded that there was sufficient evidence to support the USPO's estimate as to the quantity of crack cocaine sold by the gang. The court then postponed the sentencing of all defendants in order to hold further hearings on issues not relevant to this appeal. On September 28, 1994, the court postponed Hernandez's sentencing hearing once more, to allow for his "psychiatric or psychological examination."

On June 23, 1995, Hernandez again appeared before the district court for sentencing. The court indicated that all the issues regarding the quantity of cocaine properly attributed to the defendant for purposes of calculating the applicable Guidelines base offense level had been resolved at the April 6, 1994, hearing, and it gave reasons for departing downward from the offense level and criminal history category calculations recommended in the PSR.[1] Upon motion of Hernandez's counsel, who claimed he had not had time to prepare for sentencing, the hearing was continued to July 10, 1995. On that date, the district court gave additional reasons both for departing downward from the computations in the PSR and for departing downward from the proposed Guidelines range, and sentenced the defendant at an offense level of 35 and a criminal history category of II, which yielded a range of 188 to 235 months. On the conspiracy to distribute and distribution charges, the district court sentenced Hernandez at the lower end of the Guidelines range, to imprisonment for terms of 192 months, followed by 96 months of supervised release. On the weapon charge, the district court sentenced Hernandez to imprisonment for a term of 120 months, followed by 36 months of supervised release. The court ordered that all three sentences run concurrently. This appeal followed.

---

1. The district court apparently adopted the PSR's "grouping" of the drug offenses in accordance with Guidelines § 3D1.2(d), which provides in relevant part:

§ **3D1.2.** *Groups of Closely Related Counts*
All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve the same harm within the meaning of this rule:
. . . .
(d) When the offense level is determined largely on the basis of the total ... quantity of a substance involved....

## II. DISCUSSION

■ In reviewing a sentence imposed under the Sentencing Guidelines, we "accept the findings of fact of the district court unless they are clearly erroneous," 18 U.S.C. § 3742(e), and "will not overturn the court's application of the Guidelines to the facts before it unless we conclude that there has been an abuse of discretion." *United States v. Santiago,* 906 F.2d 867, 871 (2d Cir.1990); *see also Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996) (when sentencing pursuant to the Guidelines "district courts retain much of their traditional sentencing discretion"). However, "[w]here a sentencing court's application of the Guidelines approaches a purely legal question, we employ a *de novo* standard of review." *United States v. Medina,* 74 F.3d 413, 417 (2d Cir.1996) (internal quotation marks and citation omitted).

Hernandez urges two grounds for vacating his sentence and remanding his case for resentencing. First, he claims that at sentencing the district court failed to make findings as to the scope of his agreement to participate in the conspiracy, as required by United States Sentencing Guidelines § 1B1.3(a)(1)(B). Second, he contends that the court made an arithmetic error in calculating his adjusted offense level.

### A. *Base Offense Level*

Determining the appropriate base offense level for sentencing Hernandez under the Guidelines, *see* § 2D1.1(a)(3), requires the court to first calculate his "relevant conduct" under Guidelines § 1B1.3(a)(1)(B). The version of § 1B1.3(a)(1)(B) in effect at the time Hernandez was sentenced provides that "in the case of a jointly undertaken criminal activity," a base offense level shall be determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the *jointly undertaken criminal activity*," U.S.S.G. § 1B1.3(a)(1)(B) (1994) (emphasis added), keeping in mind that "the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not neces-

sarily the same for every participant," U.S.S.G. § 1B1.3, application note 2 (1994).

■ We have interpreted this section to require that, "in order to hold a defendant accountable for the acts of others, a district court must make two [particularized] findings: 1) that the acts were *within the scope of the defendant's agreement* and 2) that they were foreseeable to the defendant." *United States v. Studley,* 47 F.3d 569, 574 (2d Cir. 1995) (emphasis added). Hernandez asserts that in calculating the amount of cocaine for which he was responsible, the district court failed to make a required finding as to whether the quantity of drugs sold "were within the scope of the defendant's agreement." We agree. It appears from the record that the district court calculated the defendant's base offense level using *only* the foreseeability criterion, stating at the April 6, 1994, hearing that "[a defendant] is responsible for whatever distribution took place as long as it's foreseeable to him over the period during which he was a participant in the conspiracy." Without making a particularized finding as to the scope of the defendant's agreement, the district court concluded that Hernandez was responsible for the sale of 37 kilograms of cocaine—the entire amount of cocaine sold by the gang during the time he participated in the activities of the organization. Because the district court applied an incorrect legal standard and thus did not make a particularized finding as to the quantity of drugs properly attributable to Hernandez, we must vacate the sentence and remand for further fact-finding and for resentencing. *See Studley,* 47 F.3d at 576–77.

### B. *Adjusted Offense Level*

Hernandez further contends that the district court indicated that it intended to give him a two-level adjustment for acceptance of responsibility but neglected to do so when calculating his adjusted offense level at sentencing.

After reviewing the record, we are unable to decipher the district court's sentencing calculations. We cannot tell from the record whether, in calculating the defendant's adjusted offense level, the district court accounted for a contemplated firearm enhance-

ment and for all of its intended downward adjustments and departures based on the defendant's acceptance of responsibility and on his emotional state and intellectual capacity.[2]  Inasmuch as we are required to remand the case for further fact-finding, we direct the district court to also clarify its intentions and calculations at the hearing at which it will sentence the defendant anew.

CONCLUSION

For the reasons stated above, we vacate the judgment of the district court and remand for resentencing following:

(1) particularized findings by the court regarding the scope of Hernandez's agreement to participate in the gang's drug distribution activities; and

(2) a clear statement by the court of its calculation of the Guidelines offense level appropriate for sentencing in this case and of any departures it has granted from the resulting sentencing range.

Vacated and remanded.

---

2.  At the June 23, 1995, hearing, the district court concluded that under the Guidelines then in effect (the 1994 Guidelines) defendant "caps at a[n offense] level of 38."  On the basis of psychiatric reports suggesting that Hernandez has a markedly diminished capacity and various emotional problems, the court stated that it would reduce the offense level by two levels to produce a range based on an adjusted offense level of 36.  The court also indicated that it intended to give Hernandez an additional two-level reduction for acceptance of responsibility based on statements he had made regarding his involvement in the conspiracy.

At the July 10, 1995, hearing, however, the court stated that, "giving credit for acceptance of responsibility ... we end up with a Level of 38 as opposed to a Level of 43" contemplated in the PSR.  (This statement is itself confusing inasmuch as the PSR actually proposed a base offense level of 42 and an adjusted offense level of 44 after accounting for a firearm enhancement.)

The court also stated on July 10 that, although it had originally intended to depart downward two more levels based on Hernandez's emotional and intellectual situation, it had decided to depart downward three levels because the defendant had been incarcerated for 22 months—since the day of his arrest in September 1993 to the time of sentencing—in a state facility, in the district court's view a "harsher incarceration" than federal imprisonment because of its lack of educational and therapeutic programs.  The government has not challenged these downward departures on appeal.