108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Samuel Ignatius MILLAR, a/k/a Andre Singleton; Thomas F.
O'Connor; Charles Mccormick, Defendants,
PATRICK MOLONEY, Defendant-Appellant.
 No. 96-1764.
 United States Court of Appeals, Second Circuit.
 March 24, 1997.
 
 Appearing for Appellant: William Clauss, Rochester, New York.
 Appearing for Appellee: Christopher A. Buscaglia, Assistant United States Attorney, Western District of New York, Buffalo, New York.
 Before FEINBERG, CARDAMONE and WINTER, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Western District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Appellant Patrick Moloney was convicted of conspiracy to possess approximately $2.2 million of stolen money, in violation of 18 U.S.C. §§ 371, 2113(c). He was sentenced to fifty-one months imprisonment, based in part on an upward enhancement authorized by § 2B1.1(b)(7)(B) of the United States Sentencing Guidelines ("U.S.S.G.") (renumbered in the 1995 Sentencing Guidelines as § 2B1.1(b)(6)(B), but otherwise unchanged). The Guidelines section provides for a four-level sentencing increase if the offense both "affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense."
 
 
 4
 In United States v. Millar, 79 F.3d 338 (2d Cir.1996), we affirmed Moloney's conviction and sentence, except with respect to the upward enhancement based on U.S.S.G. § 2B1.1(b)(7)(B). We noted that several facts adduced at trial could support a finding that Moloney individually received in excess of $1 million but that the district court made no explicit finding in that regard. We remanded the case "for factual findings to establish the amount of gross receipts Moloney derived individually--not jointly--from the offense and for resentencing, if appropriate, under the Guidelines." Id. at 346.
 
 
 5
 Based upon the evidence adduced at trial, an addendum to the presentence report ("PSI Addendum"), and the memoranda of both parties in response to the PSI Addendum, Chief Judge Larimer found on remand the requisite facts supporting the Section 2B1.1(b)(7)(B) enhancement. Because a resentencing was unnecessary, the court held that no additional hearing was required. Moloney then brought the present appeal.
 
 
 6
 In reviewing a sentence imposed under the Sentencing Guidelines, we accept the district court's factual findings unless they are clearly erroneous and will not overturn the district court's application of the Guidelines to the facts before it unless there was an abuse of discretion. See 18 U.S.C. § 3742(e); United States v. Hernandez-Santiago, 92 F.3d 97, 100 (2d Cir.1996).
 
 
 7
 Moloney urges two grounds for vacating his sentence and remanding his case for resentencing. First, he asserts that he was entitled on remand to a factual hearing, or at least an opportunity to allocute. Second, he argues that the available evidence did not warrant a sentencing enhancement. We address each of these claims in turn.
 
 
 8
 The district court noted that it based the Section 2B1.1(b)(7)(B) enhancement on the evidence produced at trial, all of which existed at the original sentencing. Due process requires only "that the court 'afford the defendant some opportunity to rebut the Government's allegations.' " United States v. Slevin, --- F.3d ---, 1996 WL 785503, * 6 (2d Cir.1996) (quoting United States v. Eisen, 974 F.2d 246, 269 (2d Cir.1992)). Moloney had an opportunity at the original sentencing hearing to object to the recommended Section 2B1.1(b)(7)(B) enhancement and did so. At that time, Moloney had an opportunity to offer all relevant evidence bearing on the individual benefit question and explicitly argued that there was legally insufficient evidence to show that he individually derived over $1 million from his offense. Moreover, in remanding the case to the district court for further factual findings, we suggested in clear terms that the requisite finding could be based on the evidence produced at trial. Millar, 79 F.3d at 346. It was therefore well within the district court's discretion to deny appellant another evidentiary hearing concerning this issue. Because the requisite factual finding was made, the district court's decision not to sentence de novo was also within its discretion.
 
 
 9
 As to Moloney's second contention, there was sufficient direct and circumstantial evidence to support the district court's factual findings. In concluding that Moloney individually derived more than $1 million in gross receipts from his offense, the court relied on the following evidence adduced at trial. First, Moloney, not Millar, subleased an apartment in Manhattan, in which $2.2 million was recovered by the FBI. Second, Moloney had continual access to that apartment, was seen entering it numerous times, left his fingerprints, head hair, and items of personal property inside the apartment, and had access to a private, locked closet in which numerous suitcases and bags containing $2.2 million were discovered. Third, $183,300 was found at Moloney's residence, a large sum for an individual without a substantial income. Fourth, in the locked closet of the Manhattan apartment, $337,025 was found inside a suitcase with a name tag bearing Moloney's name, address, and telephone number. Fifth, another duffle bag found in the closet contained $372,490, and several hair samples similar to Moloney's. In addition to the above evidence directly connecting Moloney to at least $893,815 of the proceeds, Moloney made substantial cash loans to relatives, and purchased a new Ford Explorer. Finally, the district court found that the proximity of other suitcases in the same locked closet containing well over $1 million was very strong circumstantial evidence that Moloney individually benefitted from at least a portion thereof. Based on this evidence, it was not clearly erroneous for the district court to find that Moloney individually derived more than $1 million from a conspiracy to possess stolen money.
 
 
 10
 We therefore affirm.