UNITED STATES of America, Appellee,

v.

Leroy PRINCE, Lowell Gallimore, Defendants–Appellants.

No. 202, Docket 95–1561(L).

United States Court of Appeals, Second Circuit.

April 2, 1997.

Michael Young, New York City, for Appellant.

Shari Leventhal, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney, Timothy Macht, Assistant United States Attorney, of counsel), for Appellee.

Before: WINTER and CARDAMONE, Circuit Judges, and WARD, Senior District Judge.*

ROBERT J. WARD, Senior District Judge:

Leroy Prince ("Prince") appeals from a judgment of the United States District Court for the Eastern District of New York, Dearie, J., convicting him, upon his guilty plea, of conspiracy to distribute and possess with intent to distribute marijuana and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841. The district court sentenced Prince to sixty months imprisonment, a five year term of supervised release, and a $100 special assessment. On appeal, Prince argues that the district court's determination as to the amount of marijuana attributable to him was erroneous, that he was denied the effective assistance of counsel at sentencing, and that the district court's decision to sentence him at the upper end of the applicable guideline range deprived him of his constitutional rights to due process, equal protection, and fundamental fairness in sentencing. We disagree with each of Prince's contentions, and accordingly, affirm the judgment of the district court.

## BACKGROUND

In May 1994, Prince began renting a room in the home of Sydney Griffith ("Griffith") at 116–43 227th Street in Queens, New York. Prince frequently helped Griffith move furniture from his house to Griffith's furniture store, S & G Furniture Trading, located in

---

* The Honorable Robert J. Ward, Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation.

Brooklyn. In December 1994, Griffith asked Prince to help Griffith's brother Alvin Spencer ("Spencer") unload an upcoming shipment of furniture.

On December 28, 1994, during a routine United States customs examination of incoming cargo at Port Elizabeth in Newark, New Jersey, customs inspectors discovered forty-eight boxes hidden inside a shipping container of furniture consigned to S & G Furniture Trading. Delivery instructions accompanying the shipment indicated that the container was to be shipped to Griffith's home address. Customs inspectors opened one of the boxes and found marijuana inside.

A controlled delivery of the forty-seven unopened boxes was then arranged. The opened box was to be excluded from the delivery since it had been damaged during the customs search. On January 4, 1995, customs agents posing as truckers delivered the shipping container to 116–43 227th Street. Upon delivery, Prince, along with Spencer and two other individuals, unloaded the container, and brought the 47 boxes inside the house.

According to Prince, when the unloading was almost completed, he became suspicious because some of the boxes smelled like marijuana, and because one of the boxes was partially opened, revealing what he thought to be plastic bags filled with marijuana. Prince alleges that he thereupon insisted that all of the suspicious boxes be removed from the house, putting six of the boxes into a car owned by Lowell Gallimore ("Gallimore"), and taking all but three of the remaining boxes to the basement of a nearby grocery store. He claims then to have put the last three boxes into a van, intending to keep them for himself. Customs agents observed Prince and two other individuals carrying boxes from the house to the back entrance of a grocery store. When the agents entered the store, Prince allegedly attempted to flee, but was apprehended in the basement of the store near a partially opened box containing marijuana.

The agents found thirty-five boxes of marijuana in and around the grocery store. The six boxes which had been loaded into Galli-

more's car were also seized. Six of the forty-seven boxes, however, were never recovered.

Prince, Gallimore, and Spencer were arrested. Thereafter, customs agents brought the forty-one remaining boxes back to a customs office. The agents removed and weighed the contents of these boxes, together with the contents of the box that had been excluded from the controlled delivery. The total net weight of marijuana contained in the forty-two boxes was 2,276.9 pounds, or 1,032.8 kilograms, and the government estimated that each box weighed between fifty and ninety pounds.

A federal grand jury indicted Prince, Gallimore, and Spencer on February 3, 1995, charging them with conspiracy to distribute and possess with intent to distribute marijuana and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841. On May 4, 1995, Prince pleaded guilty to both counts of the indictment.

At Prince's first appearance for sentencing on July 31, 1995, the district court made a preliminary finding that Prince should be held accountable not only for the amount of marijuana found in the forty-one boxes seized on January 4, 1995, but also for the amounts of marijuana found in the box excluded from the controlled delivery and estimated to be in the six missing boxes. This resulted in a total estimated weight of 1168.88 kilograms, for a base offense level of thirty-two, the level assigned to offenses involving between 1000 and 3000 kilograms of marijuana.

On September 18, 1995, Prince appeared for sentencing. At sentencing, the court gave Prince a three-level reduction for acceptance of responsibility, a three-level downward adjustment because of his minor role in the offense, and a two-level downward departure based on his testimony at a *Fatico* hearing that he was unaware that the shipment contained marijuana until he was in the process of unloading the boxes. This resulted in a total offense level of twenty-four with a sentencing range of fifty-one to sixty-three months. The court then sentenced Prince to sixty months imprisonment, five years of supervised release, and a $100 special assessment. Included in the judgment is an order

pursuant to 18 U.S.C. § 3583(d) that upon completion of his sentence of incarceration Prince is to be delivered to the Immigration and Naturalization Service for immediate deportation.

## DISCUSSION

Prince first argues that the district court erred in its determination of the amount of marijuana attributable to him. Next, Prince contends that he was denied the effective assistance of counsel at sentencing. Finally, Prince claims that the district court abused its discretion in sentencing him at the upper end of the applicable guideline range. We will address each of these issues in turn.

### I. The Amount of Marijuana Attributable to Prince:

■ Prince argues that the district court erred in finding him accountable not only for the weight of marijuana in the forty-one boxes seized after his arrest, but also for the weight of marijuana in the box excluded from the controlled delivery and the weight of marijuana estimated to be in the six missing boxes. According to Prince, this error increased his base offense level from level thirty, which encompasses offenses involving 700 to 1,000 kilograms of marijuana, to level thirty-two, which encompasses offenses involving 1,000 to 3,000 kilograms of marijuana. A district court's findings as to the quantity of narcotics involved in an offense are findings of fact subject to the clearly erroneous standard of review. United States v. Thompson, 76 F.3d 442, 456 (2d Cir.1996); United States v. Pirre, 927 F.2d 694, 696 (2d Cir.1991).

In order to prevail, Prince must prove that the district court clearly erred in including in its findings as to the amount of marijuana attributable to him both the weight of the marijuana in the box excluded from the delivery and the weight of marijuana estimated to be in the six missing boxes. Only the exclusion of the weight of all seven boxes would reduce the weight of marijuana attributable to Prince to under 1,000 kilograms, thereby reducing his base offense level to level thirty.

Prince first argues that because he was unaware that the shipment contained mari-juana until he was in the process of unloading the boxes, he should not have been held responsible for the box of marijuana found by customs agents before the controlled delivery and excluded from that delivery. In support of his contention, Prince refers to the United States Sentencing Guidelines ("Sentencing Guidelines"), which provide that a defendant's relevant conduct "does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." U.S.S.G. § 1B1.3, Application Note 2.

■ We need not address this argument, however, as Prince has failed to show that the district court clearly erred in finding him accountable for the weight of marijuana estimated to be in the six missing boxes. Initially, Prince contends that the district court improperly "speculated" that the six missing boxes were among those unloaded by Prince. A district court satisfies its obligation to make "findings sufficient to permit appellate review ... if the court indicates, either at the sentencing hearing or in the written judgment, that it is adopting the recommendations in the [presentence report ("PSR")]." Thompson, 76 F.3d at 456. In the instant case, the district court in its written opinion adopted the factual findings in the PSR that Prince, along with two other individuals, unloaded and transported forty-seven boxes of marijuana that had been delivered by undercover agents to the 227th Street address. The record on appeal reveals that Prince's counsel suggested only once during sentencing that he had never been clear whether the boxes disappeared before or after delivery was completed. After apparently deciding that Prince's offense level would not be lower without the weight of the missing boxes, however, his counsel stated, "I stand corrected ... that's not an issue." In the absence of any other challenge by Prince to the PSR's findings of fact, the district court's adoption of those findings was proper. Having found that Prince personally participated in the unloading of forty-seven boxes, the district court properly determined that Prince was accountable for the marijuana in all of those boxes. See U.S.S.G. § 1B1.3, Application Note 2 (providing that a defen-

dant is "accountable for all quantities of [drugs] with which he was directly involved.")

Prince also argues that it was improper for the district court to rely on an estimation of the amount of drugs in the six missing boxes. Based on the fact that each of the forty-two recovered boxes weighed between fifty and ninety pounds, the district court adopted the government's estimate that the six missing boxes contained 300 pounds of marijuana. In the absence of a drug seizure, the district court must "approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, Application Note 12. The district court's estimation need be established only by a preponderance of the evidence. *United States v. Moore*, 54 F.3d 92, 102 (2d Cir.1995). In approximating the quantity of drugs attributable to a defendant, any appropriate evidence may be considered, "or, in other words, a sentencing court may rely on any information it knows about." *United States v. Jones*, 30 F.3d 276, 286 (2d Cir.), *cert. denied*, 513 U.S. 1028, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994).

In the instant case, the fact that the forty-two recovered boxes contained marijuana provided persuasive circumstantial evidence to support the district court's finding that the six missing boxes also contained marijuana. Similarly, the 300–pound estimate for the six missing boxes, derived from the fact that the weight of each of the forty-two recovered boxes ranged from fifty to ninety pounds, was a reasonable figure based on reliable evidence.

The district court's method of estimation is analogous to the method used in *United States v. Pirre*, 927 F.2d 694, 696–97 (2d Cir.1991). In that case, the defendant was arrested while carrying fifteen brick-shaped packages of cocaine, identical in size, five of which were subsequently destroyed by the government. The district court, in determining that Pirre was responsible for 15.09 kilograms of cocaine, relied on the calculation provided by the government chemist who weighed the contents of two of the packages, averaged the amount, and multiplied that figure by fifteen. This Court affirmed Pirre's sentence, finding that the government sufficiently showed "that its method of esti-

miating the total [was] grounded in fact and [was] carried out in a manner consistent with accepted standards of reliability." *Id.* at 697.

As in *Pirre*, the estimated total on which the district court in this case relied "was a minimum figure, derived from a conservative method that gave every benefit of the doubt" to Prince. *Id.* at 696. The district court's finding that Prince was responsible for the 300 pounds of marijuana estimated to be in the six missing boxes thus was not clearly erroneous.

## II. *Ineffective Assistance of Counsel:*

Prince argues that he was denied his Sixth Amendment right to the effective assistance of counsel at sentencing. In order to succeed on this claim, Prince must establish that his attorney's performance fell below an objective standard of "reasonableness under prevailing professional norms," and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984). This Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Moreover, because " 'the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial' ... an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993) (citation omitted).

According to Prince, he was denied the effective assistance of counsel at sentencing by defense counsel's failure to discuss with him and raise with the district court all of the reductions potentially applicable to him under the Sentencing Guidelines. Specifically, Prince contends that his counsel (1) failed to discuss with him the possibility of waiving a deportation hearing in exchange for a possible downward departure, and (2) failed to

request an adjournment of the sentencing in order to receive the benefit of a proposed amendment to the Sentencing Guidelines covering the "safety valve" provision.

■ In support of his first argument, Prince explains that six months prior to his sentencing, the Attorney General of the United States issued a memorandum recommending that federal prosecutors agree to a one to two level downward departure for noncitizen defendants who agree to automatic deportation at the conclusion of their term of incarceration. Pursuant to that memorandum, Prince asserts, the United States Attorney's offices for the Southern and Eastern Districts of New York have adopted a policy of recommending downward departures for such defendants. Here, defense counsel never discussed this issue with Prince, an undocumented alien who was certain to be deported at the conclusion of his term, and thus would have benefitted from such an option.

Prince has not, however, provided this Court with any evidence to show that such a policy was implemented in the Eastern District of New York at the time of his sentencing. Nor have we found any cases in this Circuit that address this issue. Under these circumstances, counsel's failure to raise the issue of a downward departure based on automatic deportation does not amount to a constitutional error. Moreover, there is no reason to believe that, had Prince been willing to stipulate to deportation, the district court would have departed further downward on that basis.

■ In support of his second argument, Prince states that six weeks after his sentencing, an amendment to the Sentencing Guidelines went into effect holding that defendants who qualify under the "safety valve" provision of § 5C1.2(1)—(5) are entitled to a two level downward departure if their base offense level under § 2D1.1 is twenty-six or higher. The district court found that Prince qualified under the "safety valve" provision, and that his base offense level was thirty-two. Nevertheless, Prince claims, defense counsel did not seek to have the sentencing adjourned until the amendment went into effect so that Prince could benefit from the new downward departure provision.

As the government contends, however, defense counsel's decision not to seek an adjournment of the sentencing was a reasonable exercise of professional judgment in light of the circumstances. First, the district court had previously expressed its disinclination toward an adjournment based on the mere possibility that the proposed amendment would be adopted. Second, Prince had testified at a *Fatico* hearing just days before, and the trial court appeared disposed to credit his testimony and depart downward. A delay of the sentencing might have caused the court to change its views regarding Prince's testimony.

Neither of the two errors allegedly made by Prince's counsel are "so serious" as to establish that the representation Prince received at sentencing fell outside "the wide range of reasonable professional assistance," or to render the sentencing proceeding "fundamentally unfair." Prince's claim that he was denied the effective assistance of counsel at sentencing thus fails.

### III. *Prince's Sentence:*

■ Prince contends that the district court erred in sentencing him in the top twenty-five percent of the fifty-one to sixty-three month range for his total offense level despite the fact that the amount of drugs attributed to him was in the bottom ten percent of the range for his base offense level. According to Prince, while a sentencing court need not expressly state its reasons for imposing a sentence at a particular point in the applicable guideline range if that range is narrower than twenty-four months, as it is here, the court nonetheless must choose a reasonable sentence consistent with the facts of the case. Here, Prince argues, because there was no discernable logic for its chosen sentence, the district court violated Prince's constitutional rights to due process, equal protection, and fundamental fairness in sentencing.

■ This Court "will not overturn the [district] court's application of the [Sentencing] Guidelines to the facts before it unless we conclude that there has been an abuse of discretion." *United States v. Hernandez–*

*Santiago,* 92 F.3d 97, 100 (2d Cir.1996) (quoting *United States v. Santiago,* 906 F.2d 867, 871 (2d Cir.1990)). The district court's decision to sentence Prince in the upper end of the applicable sentencing range thus is subject to review for abuse of discretion.

Prince's argument is misguided. As Prince concedes, a sentencing court need not explain its reasons for imposing a sentence at a particular point within a sentencing range unless that range is broader than twenty-four months. *See* 18 U.S.C. § 3553(c)(1). It follows that the district court was under no obligation to impose a sentence at a particular point, as long as the chosen sentence was within the applicable range.

Moreover, the district court provided a sufficient explanation for the sentence imposed on Prince. During the sentencing proceeding, the district court judge stated on the record that while he was willing to reduce Prince's sentence somewhat because he credited Prince's testimony that he was unaware that the shipment contained marijuana until he was in the process of unloading the boxes, he would not depart further because of his doubts about Prince's role. The judge further explained that a five year sentence was appropriate for someone who could have faced a ten year mandatory minimum, and was involved with a "whole boatload of marijuana."

In addition, while the amount of marijuana at issue was close to the 1,000 kilogram threshold that resulted in Prince's base offense level of thirty-two, Prince's actual sentence was based on the lower guideline range of level twenty-four. It thus was wholly reasonable and consistent with the facts of this case for the district court to sentence him at the upper end of that range.

## CONCLUSION

Prince has failed to demonstrate that the district court erred either in its determination of the amount of marijuana attributable to him or in its decision to sentence him to a term of sixty months. Moreover, Prince has not persuaded us that his defense counsel's alleged errors constitute ineffective assistance of counsel. For these reasons, we affirm the district court's judgment of conviction and sentence.