09-5327-cr (con)
United States v. Theriault

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25TH day of January, two thousand eleven.

PRESENT:   JOSÉ A. CABRANES,
                   REENA RAGGI,
                           *Circuit Judges*,
                   RICHARD K. EATON,
                           *Judge.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        *Appellee*,

   v.                                                                        No. 09-5327-cr(con)

DANNY THERIAULT, also known as Vinny,

        *Defendant-Appellant*,

DAVID SUNDAY, also known as Snookty, DENNY THERIAULT, JOSHUA SPAULDING, also known as Spank, CHAD E. FELLERS, JARED CALLAHAN, also known as Roo, and JACKALEEN THERIAULT, also known as Ma,

        *Defendants.*[**]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

[*] The Honorable Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

[**] The Clerk of Court is directed to amend the caption to read as shown above.

1

**FOR APPELLANT:**          LEE GREENSTEIN, Albany, NY.

**FOR APPELLEE:**          BRENDA K. SANNES, Assistant United States Attorney
                          (Richard S. Hartunian, United States Attorney, *on the brief*, and
                          Carl E. Eurenius, Assistant United States Attorney, *of counsel*),
                          Office of the United States Attorney, Northern District of
                          New York, Syracuse, NY.

Appeal from a December 21, 2009 judgment entered in the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

An indictment filed in the Northern District of New York on April 19, 2007, charged defendant-appellant Danny Theriault ("Theriault"), his mother, Jackaleen Theriault, his brother, Denny Theriault, and four other defendants, David Sunday, Joshua Spaulding, Chad E. Fellers, and Jared Callahan, with conspiring to distribute and possess with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. § 841 and 18 U.S.C.§ 2 (Count One), and conspiring to import into the United States from Canada over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 952, 963 and 18 U.S.C.§ 2 (Count Two). Nearly two years later, the government proceeded to trial against Theriault and his mother (jointly, the "Theriaults"). At the close of the government's case, the District Court granted, with the government's consent, the Theriaults' motion for a judgment of acquittal on Count Two. Theriault (along with his mother) was subsequently found guilty on Count One. The District Court sentenced Theriault to a term of 210 months. Theriault now appeals his conviction and sentence.

## I.     Background

At trial, the government introduced considerable evidence in support of its theory of the case. According to the government, co-conspirator David Sunday supplied large quantities of marijuana—imported from Canada—to the Theriaults, who, along with the other named co-conspirators, redistributed the marijuana and helped to return some of the proceeds back to the Canadian source of supply.

New York State Trooper Gary Snell testified about Theriault's post-arrest admissions. According to Snell, Theriault acknowledged that he had been part of a marijuana trafficking conspiracy with David Sunday for over a year. As Snell further explained:

> [Theriault] told me they used trapped out vehicles to smuggle marijuana, typically Mr. Theriault would be told that the vehicle was left on [the] American side of the St. Regis Indian Reservation, which he was told was loaded with marijuana. He or another of his partners was given instructions where to take the car, deliver the marijuana and return the vehicle back to the Indian reservation where it would be picked up by someone.

2

Co-conspirator Jared Callahan, who had agreed to plead guilty prior to the Theriaults' trial, testified for the government as a cooperating witness. Callahan testified that from January 2006 to March 2007 he frequently purchased large quantities of marijuana from the Theriaults or their associates. Although Danny Theriault—known to Callahan as "Vinny"—was never personally present at any drug transaction involving Callahan, he served as Callahan's primary contact in arranging the drug deals. Additionally, the government introduced inculpatory evidence collected from various vehicle stops and wiretaps relating to the Theriaults' involvement in this drug conspiracy.

At the close of the government's case, the Theriaults moved for a judgment of acquittal on all charges against them pursuant to Rule 29 of the Federal Rules of Criminal Procedure. While considering this motion, the District Court expressed doubts about whether the government had met its burden of proof concerning Count Two—the importation conspiracy. The District Court questioned whether the government had done anything to establish that Canada was the source of the drugs supplied to the Theriaults by Sunday. In response to these concerns, the government conceded that the Theriaults' Rule 29 motion should be granted as to Count Two only.

Neither Danny Theriault nor Jackaleen Theriault testified or called any witnesses in their defense. The jury found both Theriaults guilty of the marijuana distribution conspiracy alleged in Count One of the indictment, and Danny Theriault was sentenced to 210 months' imprisonment.

## II.     Discussion

On appeal, Theriault raises two challenges to his conviction and two challenges to his sentence.

*A. Conspiracy Conviction*

Theriault first argues that the dismissal of the second count of the indictment effectively amended the indictment as a whole. This argument is without merit. In *United States v. Miller*, 471 U.S. 130, 144 (1985), the Supreme Court explicitly rejected "the proposition that it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it." Count Two charged Theriault with conspiring to import a controlled substance from Canada into the United States. The government's acknowledged failure to present sufficient evidence to the jury that the drugs in question originated in Canada did not alter any of the essential elements contained in Count One of the indictment returned by the grand jury because Count One only required the government to prove that Theriault conspired to possess a controlled substance with intent to distribute. Accordingly, the government did not violate the Fifth Amendment's grand jury guarantee in its prosecution of Theriault.[1]

---

[1] The Grand Jury Clause provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V.

Relatedly, Theriault's argument that the District Court erred by not providing the jury a "multiple conspiracy" instruction also must fail. "Where, as here, 'only one conspiracy has been alleged and proved[,] . . . defendants are not entitled to a multiple conspiracy charge.'" *United States v. Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990)). While Theriault arguably would have been entitled to a multiple conspiracy instruction if Count Two had reached the jury, the government ended up only presenting one conspiracy to the jury—namely, that Danny Theriault, David Sunday, Jackaleen Theriault, Denny Theriault, Joshua Spaulding, Chad E. Fellers, and Jared Callahan conspired to distribute and possess with intent to distribute over 100 kilograms of marijuana.

On appeal, Theriault alleges that "[r]emoving the importation charge did not remove the importation component of the conspiracy from the first count of the Indictment." In support of this claim, Theriault points to the "Manner and Means" section accompanying Count One of the indictment. In relevant part, that section states:

> It was part of the conspiracy that co-conspirator David Sunday would supply large quantities of marijuana from Canada to co-conspirators Jackaleen Theriault, a/k/a Ma, and her son, Danny Theriault[,] a/k/a Vinny, in the United States. Jackaleen and Danny Theriault, in turn, would redistribute quantities of this marijuana in the North County, New York, area, and Jackaleen would also transport quantities of this marijuana to other co-conspirators in the Albany, New York area, including but not limited to Jared Callahan, a/k/a Roo.

But, as discussed above, it is constitutionally permissible to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it. Here, the source of the drugs was not a necessary allegation to the conspiracy alleged in Count One.

Additionally, the very reason that the importation conspiracy charge was dropped is because the parties and the District Court ultimately agreed that the jury had seen almost no evidence supporting it, so there is no reason to think that the jury may have confused Theriault's involvement in a hypothetically distinct importation conspiracy with his involvement in the conspiracy alleged in Count One.

The indictment charged Theriault with conspiring to distribute and possess with intent to distribute over 100 kilograms of marijuana. The jury was clearly and properly instructed on this charge, and the government introduced overwhelming evidence—including wiretapped conversations, eyewitness testimony, Theriault's post-arrest admissions, and physical evidence—in support of a guilty verdict.

4

*B. Sentence*

Theriault also challenges the validity of his 210-month sentence. The District Court, in accordance with the Presentence Investigation Report ("PSR") prepared by the United States Probation Office, determined that Theriault was responsible for between 400 and 700 kilograms of marijuana, yielding a base offense level of 28. U.S.S.G. § 2D1.1(c)(6). When combined with a two-level enhancement for obstruction of justice (which is unchallenged on appeal) and a criminal history category of VI, this produced a Guidelines range of 168-210 months. Theriault first argues that the District Court overstated the amount of marijuana attributable to him based on the evidence admitted at trial.

"'A district court's findings as to the quantity of narcotics involved in an offense are findings of fact subject to the clearly erroneous standard of review.'" *United States v. McLean*, 287 F.3d 127, 133 (2d Cir. 2002) (quoting *United States v. Prince*, 110 F.3d 921, 924 (2d Cir. 1997)). "To reject a finding of fact as clearly erroneous, we must, upon review of the entire record, be left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks omitted). Furthermore, "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, cmt. n.12.

According to the PSR, evidence at trial established that Theriault was responsible for 1081.9 pounds (490.79 kilograms) of marijuana. Therefore, in order to be entitled to resentencing with a lower base offense level, Theriault must demonstrate that the PSR, as accepted by the District Court, was clearly erroneous in including at least 90.79 kilograms (or 199.7 pounds) of the marijuana attributable to him.

Theriault makes numerous challenges to the calculations contained in the PSR. First, based on Callahan's testimony at trial, the PSR credited Theriault for being responsible for 210 pounds of marijuana involved in four separate transactions that occurred at the Schenectady sewer plant in January 2006. The government now concedes that the PSR miscalculated this amount and that Callahan's testimony supports a drug quantity of only 160 pounds during this timeframe—a reduction of 50 pounds. Theriault contends that even this reduced number is too high, because while Callahan acknowledged purchasing 40 pounds of marijuana on each of his final three transactions during this time, he only purchased 10 pounds in his initial encounter. Although Callahan testified that his suppliers had more marijuana with them, he provided absolutely no indication as to the size of the remaining stash. The PSR evidently assumed that there were 40 total pounds of marijuana present at this initial meeting at the Schenectady sewer plant because the Theriaults brought 40 pounds of marijuana to their subsequent three transactions at this same location. While we have some doubts about this particular estimate, we cannot say that the District Court's finding on this score was clearly erroneous.

The PSR held Theriault responsible for 324 pounds of marijuana for February-March 2006. The PSR arrived at that figure by combining two separate sources of evidence introduced at trial. Callahan testified that, from February 2006 through the first week of March, he purchased approximately 40 pounds of marijuana on seven separate occasions—280 pounds in total. Additionally, on March 8, 2006, while returning from a drug deal in which Callahan had purchased 40 pounds of marijuana for $98,000, Denny Theriault and Josh Spaulding were pulled over by police. Their car was searched, and authorities uncovered $104,905 (including money identified by Callahan as his own) in cash from a hidden compartment. The PSR determined that the $104,905 was the equivalent of 44 pounds of marijuana and thus added that sum to Theriault's total. Theriault now argues that he has been victimized by double-counting because the cash uncovered during the traffic stop clearly included the proceeds from Callahan's recent 40-pound purchase. We agree, and thus conclude that Theriault should have been held responsible for 284 pounds of marijuana as a result of transactions conducted in February-March 2006, rather than the 324 pounds identified in the PSR (this results in a further reduction of 40 pounds to Theriault's total amount).

Theriault next challenges the PSR's finding—based once again on Callahan's testimony—that 360 pounds of marijuana were attributable to him based on several transactions that took place between January and February 2007. Relying on Callahan's testimony, the PSR concluded that Callahan purchased 20 pounds of marijuana from the Theriaults on 18 separate occasions during this time. Theriault claims that the PSR over-counted the number of transactions. According to Theriault, Callahan testified that "ten or twelve" deals took place at a private apartment, "roughly two" took place at the Skyline Motel, two occurred at the Super-8 Motel, and one took place right off of Exit 11 on the Northway. Theriault—taking the low end of Callahan's approximations—thus claims that he should only be held responsible for 15 separate transactions (or 60 fewer pounds of marijuana). We disagree. In addition to the instances acknowledged by Theriault, Callahan also testified that he "sometimes" purchased drugs from the Theriaults at the L&M motel. He also strongly implied that more than one transaction took place off of Exit 11. Given this testimony, it was certainly reasonable for the PSR—as well as the District Court—to estimate that 18 separate transactions took place during this time.

Finally, Theriault claims that the PSR overstated his drug activity in March and April 2007 by double-counting evidence gleaned from a series of telephone intercepts and two separate seizures. From March 10, 2007, to April 14, 2007, members of the conspiracy were recorded discussing six separate transactions involving at least 124 pounds of marijuana. Separately, on March 18, 2007, officers recovered $24,339 (the equivalent of 10 pounds of marijuana) following a search of Jackaleen Theriault's car, and, on April 24, $21,105 (the equivalent of 8.9 pounds of marijuana) was discovered following a search of a car parked at Theriault's home. Theriault now argues that this additional 18.9 pounds of marijuana attributable to these two seizures must already have been accounted for in the wiretap evidence considered by the PSR because the wiretaps took place during a similar time frame.

Even assuming for the argument that 18.9 pounds was in fact double-counted, discounting this amount, even when combined with the 90 pounds that we have already determined to have been

6

improperly attributed to him, is not enough for us to disturb the District Court's finding that Theriault was responsible for in excess of 400 kilograms of marijuana.

In addition to his challenges to specific findings made in the PSR, Theriault also argues that the PSR is unreliable since so much of it is predicated on the uncorroborated testimony of Callahan—an admitted drug addict who was cooperating with the government. However, "these matters bear on [Callahan's] credibility, which the District Court was free to determine for itself." *McLean*, 287 F.3d at 133. "We give a district court's findings as to the credibility of witnesses strong deference, and there is nothing in the record to suggest that the District Court's credibility determinations in this case were clearly erroneous." *Id.* (quotation marks omitted).

Theriault lastly claims that the sentence imposed by the District Court was substantively unreasonable. We review the reasonableness of a district court's sentencing determinations under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *see generally Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) ("A district court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (quotation marks omitted)). While not presumptively reasonable, *United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008), "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). This is so because

> by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.

*Rita v. United States*, 551 U.S. 338, 347 (2007). Having reviewed Theriault's arguments, we conclude that the sentence imposed by the District Court was reasonable.

## III.    Conclusion

We have considered all of Theriault's remaining arguments and find them to be without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court