U.S.A. v. Kilkenny

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Submitted October 27, 2006      Decided July 5, 2007)

Docket No. 05-6847-cr

_____

United States of America,

Appellee,

v.

Patrick J. Kilkenny,

Defendant-Appellant.

_____

Before:

CARDAMONE, WALKER, and STRAUB,
Circuit Judges.

_____

Defendant Patrick Kilkenny appeals from an amended judgment of conviction entered in the United States District Court for the Northern District of New York (Hurd, J.) on December 8, 2005, after pleading guilty to bank fraud in violation of 18 U.S.C. § 1344(2), mail fraud in violation of 18 U.S.C. §§ 1341, 1342 and structuring a financial transaction to evade currency reporting requirements in violation of 31 U.S.C. § 5324(a)(3). Defendant was sentenced to 216 months in prison, five years of supervised release, restitution of $7,860,321.39, and a special assessment of $300.

Remanded for resentencing.

_____

_____

Terence L. Kindlon, Kindlon and Shanks, P.C., Albany, New York, filed a brief for Defendant-Appellant.

Sara M. Lord, Assistant United States Attorney, Albany, New York (Glenn T. Suddaby, United States Attorney, Brenda K. Sannes, Assistant United States Attorney, Northern District of New York, Albany, New York, of counsel), filed a brief for Appellee.

_____

CARDAMONE, Circuit Judge:

Patrick Kilkenny (defendant or appellant) appeals from an amended judgment of conviction entered on December 8, 2005 in the United States District Court for the Northern District of New York (Hurd, J.). The conviction followed Kilkenny's plea of guilty to three counts of an information charging him with bank fraud in violation of 18 U.S.C. § 1344(2), mail fraud in violation of 18 U.S.C. §§ 1341, 1342, and structuring a financial transaction to evade currency reporting requirements in violation of 31 U.S.C. § 5324(a)(3).

Applying the 2002 version of the United States Sentencing Guidelines (Guidelines or U.S.S.G.), the district court sentenced Kilkenny principally to a term of 216 months imprisonment. Kilkenny appeals this judgment alleging, inter alia, that the district court's use of the 2002 version of the Guidelines violated the Ex Post Facto Clause of Article I of the Constitution. U.S. Const. art. 1, § 9, cl. 3. We think that application of the 2002 version of the Guidelines was in error and therefore remand the case for resentencing. We have considered defendant's other arguments and find them to be without merit.

BACKGROUND

The facts underlying this appeal are largely uncontested. On July 25, 2003 Kilkenny waived indictment and pled guilty to each of three counts in a felony information. The plea agreement that defendant entered into with the government on that date

2

included a detailed set of stipulated facts that formed the factual predicate for the guilty plea. Although Kilkenny admitted to having fraudulently obtained over a dozen bank loans and to having committed various other crimes, only three criminal counts were charged against him in the information.

Count One charged him with executing a scheme "[f]rom in or about September 2000 through on or about May 8, 2002" to defraud M&T Bank. The government alleged, and defendant admitted, that on September 19, 2000 he applied for and subsequently received a loan from M&T Bank in the amount of $467,541. In his loan application, Kilkenny grossly overstated his assets and income, submitted fraudulent personal and corporate income tax returns, and failed to report more than $1.3 million in debts. As a result of these misrepresentations, M&T Bank was forced to foreclose on the loan on May 8, 2002 and in so doing suffered a monetary loss of more than $450,000. Count Two charged defendant with defrauding 22 individuals of $910,000 by inducing them to invest in Panamanian bonds which Kilkenny was not authorized to issue and which were not valid instruments. The government alleged and defendant admitted that this scheme took place from February 2000 through June 2001. Finally, in Count Three of the information, the government charged defendant with structuring certain cash deposits on July 24, 2001 to avoid currency reporting requirements.

Following defendant's guilty plea, the United States Probation Office prepared a presentence investigation report

3

(PSR) using the 2002 version of the Guidelines. The PSR calculated a base-offense level of six pursuant to U.S.S.G. § 2B1.1(a) (2002) and recommended five enhancements: (1) a 20-level enhancement for the amount of loss, id. at § 2B1.1(b)(1)(K); (2) a four-level enhancement for the number of victims, id. at § 2B1.1(b)(2)(B); (3) a two-level enhancement for obtaining more than $1 million from financial institutions, id. at § 2B1.1(b)(12)(A); (4) a two-level enhancement for obstruction of justice, id. at § 3C1.1; and (5) a two-level enhancement for defendant's supervision of a criminally responsible participant, his bookkeeper, Melanie Ramsey, id. at § 3B1.1(c). The resulting total offense level was 36, with a Guidelines range between 188 and 235 months imprisonment.

At a sentencing hearing on December 12, 2003 defense counsel made several objections to the PSR. First, defense counsel took issue with the version of the Guidelines used to calculate defendant's sentence. Kilkenny contended that instead of the 2002 Guidelines, the 2000 Guidelines should have been applied because all of the conduct relating to the offenses of conviction occurred before November 1, 2001 when the 2001 version of the Guidelines went into effect. Second, defense counsel objected to the two-level enhancement for Kilkenny's supervision of a criminally responsible participant. Third, the defense asserted a three-level reduction was warranted for acceptance of responsibility. The sentencing court was not persuaded by these objections. Applying the 2002 version of the Guidelines, which

4

are in all relevant respects identical to the 2001 version, the court sentenced Kilkenny to 235 months in prison, followed by five years of supervised release, and restitution in the amount of $7,327,854.36.

While defendant's first appeal to this Court was pending, the Supreme Court handed down United States v. Booker, 543 U.S. 220 (2005), which rendered advisory the sentencing range calculated under the Guidelines. In a summary order, we remanded the case for resentencing pursuant to Booker and declined to reach the other issues defendant raised on appeal. United States v. Kilkenny, No. 03-1775 (2d Cir. March 15, 2005).

Defendant was resentenced on November 28, 2005. The district court again applied the 2002 version of the Guidelines, finding that the offense of conviction continued through May 8, 2002. In particular, it concluded that, although Kilkenny applied for and received the M&T bank loan in September 2000, his subsequent failure to make payments on the loan extended the offensive conduct until the bank initiated foreclosure proceedings in 2002. The trial judge stated that in applying the 2002 date he was "relying on the entire range of conduct" and that Kilkenny's conduct of fraud and deception extended "actually even into 2003 in relation to additional individual victims which were not specifically charged but detailed in the presentence report." The court also noted that "the May 8, 2002 date is specifically charged in Count One of the Information." Applying the 2002 Guidelines, it resentenced Kilkenny to a total term of

5

216 months imprisonment, 19 months less than the sentence it had originally imposed, followed by five years of supervised release, restitution of $7,860,321.39, and a special assessment of $300.

From this judgment, Kilkenny appeals. For the reasons set forth below, we remand the case to the district court with instructions to resentence defendant under the 2000 version of the Guidelines.

DISCUSSION

I   Standard of Review

We review a sentencing court's interpretation and application of the Guidelines de novo. United States v. Sloley, 464 F.3d 355, 358 (2d Cir. 2006). Findings of fact are reviewed under the clearly erroneous standard. Id. A finding is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).

II   Ex Post Facto Laws

The premise of this opinion rests on an application of that provision in Article I of the United States Constitution that prohibits Congress from passing any "ex post facto Law." See U.S. Const. art. I, § 9, cl. 3; see also art. I, § 10, cl. 1 (prohibiting states from passing any ex post facto law). For that reason it is helpful to state first our understanding of what that constitutional clause means. It is hard to improve on the definition of the Ex Post Facto Clause set out in an early

Supreme Court case, Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798). In that case Justice Chase described the following kind of legislation as prohibited

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.
>
> 2d. Every law that aggravates a crime, or makes it greater than it was, when committed.
>
> 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.
>
> 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Id. at 390.

The reason for the clause's adoption in the Constitution was, as the Supreme Court has explained, to restrain Congress from enacting "arbitrary or vindictive" laws. See Miller v. Florida, 482 U.S. 423, 429 (1987). The clause also ensures that individuals are given "fair warning" of a law's effect. Id. at 430. Examples from history vividly illustrate the importance of these dual functions. Perhaps the most dramatic example of a vindictive law unconstrained by any ex post facto prohibition occurred in pre-World War II Germany. After an arsonist burned the Reichstag in Berlin in February 1933, the newly empowered Nazi government authorized increasing the punishment for arson from imprisonment to death. See 2 Morris Ploscowe, Crime and Criminal Law 70-71 (1939). The arsonist was duly executed. Id.

7

Blackstone illustrates the second purpose of the Ex Post Facto Clause, providing fair warning, by looking to the policies of the Roman despot Caligula. See 1 William Blackstone, Commentaries on the Laws of England 46 (1765). Caligula had laws written in fine print and hung them high up on pillars so that they were not available to nor readable by the Roman citizens affected by such laws. Id. They provided no fair warning and so, like laws made ex post facto, they would not have provided citizens fair notice to refrain from the criminalized conduct. Sash v. Zenk, 439 F.3d 61, 64 (2d Cir. 2006) (notice problems arise when retrospective changes are made in laws upon which citizens are entitled to rely).

Thus, the Ex Post Facto Clause enshrines in the Constitution a basic presumption of our law, that is, legislation in the criminal law "is not to be applied retroactively." See Johnson v. United States, 529 U.S. 694, 701 (2000).

### III  Which Version of the Guidelines Applies?

#### A.  General Principles

With that background, we turn to the case at hand. Ordinarily a sentencing court must apply the version of the Guidelines in effect on the date of the defendant's sentencing. United States v. Keller, 58 F.3d 884, 889 (2d Cir. 1995); see also United States v. Keigue, 318 F.3d 437, 442 (2d Cir. 2003) (remanding because district court applied expired version of Guidelines when no ex post facto problem was raised by application of Guidelines in effect at time of sentencing). At

8

the same time we have recognized an exception to this general rule. When the application of the Guidelines in effect at the time of sentencing would result in a more severe penalty than would application of the Guidelines in effect at the time the offense was committed, the Ex Post Facto Clause requires the use of the earlier version of the Guidelines. Keller, 58 F.3d at 889.

   B.   Is This an Ex Post Facto Application of the Guidelines?

To decide whether a criminal law is ex post facto, we apply a two-part test: first, the law must be retrospective, applying to events that occurred before its enactment; second, the law must be disadvantageous to the individual affected by it. Miller, 482 U.S. at 430; Keller, 58 F.3d at 889. In this case, it is not disputed that defendant was disadvantaged by the application of the 2002 Guidelines. If appellant had been sentenced under the 2000 Guidelines, he would have been subject to a recommended Guidelines range of 97 to 121 months imprisonment. Under the 2002 Guidelines, he was subject to a recommended range of 188 to 235 months. That is roughly 8 to 10 years compared to 16 to 20 years.

Our inquiry is thus focused on the first prong of the ex post facto test: Was the application of the 2002 Guidelines to Kilkenny's crimes retrospective? The application of a particular version of the Guidelines is retrospective if the version went into effect after the last date of the offense of conviction. See United States v. Fitzgerald, 232 F.3d 315, 318-19 (2d Cir.

9

2000) (per curiam). The district court determined the last date of offensive conduct in this case was May 8, 2002. This finding rested on the following bases: (1) the statement in the information that the M&T Bank fraud scheme lasted "[f]rom in or about September 2000 through on or about May 8, 2002;" (2) Kilkenny's failure to make payments on the M&T Bank loan until the loan was foreclosed on May 8, 2002; and (3) the "entire range of conduct" which extended into 2003. We address each of these bases in turn.

### 1. The Statement in the Indictment

To determine the last date of the offense of conviction, a sentencing court looks at the conduct charged in the information or indictment. See United States v. Broderson, 67 F.3d 452, 456 (2d Cir. 1995); U.S.S.G. § 1B1.11 cmt. n.2. Like any other factual determination made by a sentencing court, the finding of the last date of the offense of conviction must withstand clear error review. See, e.g., United States v. Carter, 410 F.3d 1017, 1027 (8th Cir. 2005); United States v. Nash, 115 F.3d 1431, 1441 (9th Cir. 1997).

Because a sentencing court may not consider uncharged or acquitted conduct in determining the last date of the offense of conviction, see United States v. Zagari, 111 F.3d 307, 324-25 (2d Cir. 1997), the dates alleged in the charging instrument will generally be determinative for ex post facto purposes, see Broderson, 67 F.3d at 456. However, circumstances may arise where a date in the charging instrument clearly exceeds the

offensive conduct. See, e.g., United States v. Foote, 413 F.3d 1240, 1250 & n.6 (10th Cir. 2005) (finding that "uncontradicted evidence" established that offense ended on December 7, 1998 despite statement in indictment that conspiracy continued until October 2000). In such circumstances, it is clearly erroneous for a sentencing court to rely on the date charged in the indictment to determine the last date of the offense of conviction. For example, in Nash, the Ninth Circuit had a case before it in which the indictment charged that the defendant's fraudulent scheme continued until 1988, but all of the specific incidents described in the indictment occurred before November 1, 1987. 115 F.3d at 1441. The Nash court upheld the district court's determination that, contrary to the statement in the indictment, the offense was completed prior to November 1, 1987. Id.

Admittedly, we have not always made perfectly clear that dates in an indictment are not necessarily dispositive. In Broderson, for example, we stated, "[t]he last date of the offense, as alleged in the indictment, is the controlling date for ex post facto purposes." 67 F.3d at 456. Read in context, however, this language only stands for the unsurprising proposition that a sentencing court must look to the conduct alleged in the count of the charging instrument under which the defendant was convicted to determine the last date of offensive conduct. The defendant in Broderson was charged with illegally transmitting an interstate wire communication on October 1, 1990.

11

Id. On appeal, Broderson asserted the government could have charged the crime differently, but he did not contest that he had transmitted the wire communication on that date. Id. at 456-57. We ruled that the district court had correctly determined the last date of offensive conduct was October 1, 1990, as charged in the indictment. Id. at 457. Broderson thus did not consider or decide the question of whether a district court should rely on a date in a charging instrument that clearly exceeds the offensive conduct. We now hold that it may not.

The time period provided for in the charging instrument in this case clearly exceeds the offensive conduct. Although the information states that Kilkenny executed the M&T bank fraud scheme from "in or about September 2000 through on or about May 8, 2002," neither the information nor the stipulated facts accompanying the plea agreement describe any offensive conduct taken by Kilkenny with respect to the M&T bank fraud scheme after 2000. It is instead uncontested that the M&T loan was applied for and received by Kilkenny in September 2000 and that he took no further action with respect to that loan -- apart from failing to repay it -- after September 2000. There is no evidence that any offensive conduct regarding the M&T bank fraud scheme occurred after 2000. It was therefore clear error for the district court to rely on the May 8, 2002 date.

2. Failure to Repay the Fraudulently Obtained Bank Loan

The district court's finding that Kilkenny failed to repay the bank loan in 2002 does not change this result. Failure to

12

repay a fraudulently obtained bank loan does not constitute conduct for the offense of bank fraud. Under the federal bank fraud statute, it is a crime to "knowingly execute[ ], or attempt[ ] to execute, a scheme or artifice . . . to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. The language of § 1344 punishes each execution of a fraudulent scheme, not each act in furtherance of such a plan. United States v. Harris, 79 F.3d 223, 232 (2d Cir. 1996). Although the statutory text does not define "execution," there is helpful case law interpreting that term. In analyzing when a fraudulent scheme was executed, courts look to a number of factors, including the overall contours of the fraudulent scheme and -- perhaps most importantly -- the point at which the financial institution was put at risk of financial loss. See United States v. De La Mata, 266 F.3d 1275, 1287-88 (11th Cir. 2001) ("[A] bank fraud offense is complete upon the 'execution,' or attempted execution of the scheme. . . . [E]ach part of the scheme that creates a separate financial risk for the financial institution constitutes a separate execution."); United States v. Anderson, 188 F.3d 886, 888 (7th Cir. 1999) ("[T]he crime of bank fraud is complete when the defendant places the bank at a risk of financial loss, and not necessarily when the loss itself occurs."); United States v. Rimell, 21 F.3d 281, 287 (8th Cir. 1994) (stating that to

13

determine what constitutes an execution of a bank fraud scheme one must first "ascertain the contours of the scheme"); United States v. Hord, 6 F.3d 276, 282 (5th Cir. 1993) (finding that bank fraud plan was executed with each deposit of a bogus check in part because "it was the deposits that put the bank at risk"); see also United States v. Reitmeyer, 356 F.3d 1313, 1318 (10th Cir. 2004) (holding, in the context of the Major Fraud Act, that determining when a scheme is executed will depend on factors including the goal of the plan, its nature, the benefits intended, and whether the conduct created a new and independent financial risk.).

There are of course situations where conduct for the offense of bank fraud occurs after the point at which the bank is first put at risk of financial loss. Our decision in United States v. Duncan, 42 F.3d 97 (2d Cir. 1994), provides a useful illustration of such a situation. In Duncan, several directors of a savings and loan association conspired to purchase two parcels of real estate in order to lease or sell the property back to the bank at a profit. Id. at 99-100. The transactions were orchestrated so as to hide the conspirators' interest in the real estate from the other bank directors. Id. After his conviction for bank fraud, Duncan raised an ex post facto challenge on appeal. He contended the bank fraud was complete once the conspirators agreed to secretly purchase the property. Id. at 103-04. We rejected that characterization, holding instead that the offensive conduct was not complete until the real estate was sold back to the bank.

14

Id. at 104. Key to the result in Duncan was the fact that the sale of these properties to the bank was the "central object of the charged criminal conduct." Id. (emphasis added). Notably, the resale of the properties to the bank in Duncan posed a risk of financial loss that was separate and independent from the defendant's initial usurpation of the corporate opportunity. See id. (stating that conspirators intended to both "seize for themselves two pieces of property at a bargain" and "sell the properties to the bank at a premium").

There are no facts in the case presently before us analogous to those at issue in Duncan. It is clear that the main purpose of Kilkenny's bank fraud scheme was to obtain the M&T bank loan on false pretenses. The bank was put at risk of financial loss as soon as Kilkenny had submitted the fraudulent loan application and obtained the funds. The information alleges no further conduct on Kilkenny's part that created a new or additional risk of loss.

The government insists that, by failing to make payments on the fraudulently obtained loan, appellant extended the life of the illegal plan through his enjoyment of the proceeds. Adopting this approach would go too far, potentially extending the offense of bank fraud indefinitely. No doubt, the vast majority of bank fraud schemes entail not only obtaining but also retaining the ill-gotten gains. But when the proceeds of a criminal venture are spent may not be viewed as part of a plan to defraud. See Anderson, 188 F.3d at 891. To rule otherwise and hold that

15

failure to repay a fraudulently obtained bank loan constitutes conduct for the offense of bank fraud would extend the life of the offense so indefinitely as to render the ex post facto prohibition ineffective. The Supreme Court has cautioned against such a result in other contexts. See Grunewald v. United States, 353 U.S. 391, 402 (1957) (holding a conspiracy to conceal should not be inferred from acts of concealment because "every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces" and the opposite result would "extend the life of a conspiracy indefinitely").

Kilkenny's M&T bank fraud scheme was executed no later than when he received the funds from his fraudulent loan application. Consequently, it was error for the district court to treat defendant's subsequent failure to repay the fraudulently obtained bank loan as conduct that was part of the offense of bank fraud.

### 3. The Relevance of the Entire Range of Conduct

Finally, the district court based its decision to apply the 2002 Guidelines on the entire range of conduct committed in the case that continued "actually even into 2003 in relation to additional individual victims which were not specifically charged but detailed in the presentence report." However, the law in this Circuit is plain that uncharged conduct occurring after the conduct of conviction cannot be considered when determining which version of the Guidelines to apply. See Zagari, 111 F.3d at 324-25. Commentary to the Guidelines, which we have found to be

16

highly persuasive evidence of the Sentencing Commission's intent, addresses this precise issue

> Under subsection (b)(1), the last date of the offense of conviction is the controlling date for ex post facto purposes. For example, if the offense of conviction (i.e., the conduct charged in the count of the indictment or information of which the defendant was convicted) was determined by the court to have been committed between October 15, 1991 and October 28, 1991, the date of October 28, 1991 is the controlling date for ex post facto purposes. This is true even if the defendant's conduct relevant to the determination of the guideline range under § 1B1.3 (Relevant Conduct) included an act that occurred on November 2, 1991 (after a revised Guideline Manual took effect).

U.S.S.G. § 1B1.11 cmt. n.2. Reliance on defendant's uncharged conduct in 2002 and 2003 was accordingly in error.

Application of the 2002 version of the Guidelines was both retrospective and disadvantageous to the defendant. As a consequence, we remand to the district court for resentencing under the 2000 Guidelines.

IV Defendant's Objections to Sentence Enhancements

Appellant raises two final objections to his sentence, neither of which have merit. First, Kilkenny maintains the district court erred in imposing a two-level enhancement for his supervision of a criminally responsible participant. Under U.S.S.G. § 3B1.1(c), a two-level enhancement may be applied if the "defendant was an organizer, leader, manager, or supervisor in any criminal activity." We review the district court's finding that Kilkenny acted as the supervisor of a criminally

17

responsible participant under the clearly erroneous standard. See United States v. Brinkworth, 68 F.3d 633, 641 (2d Cir. 1995).

Defendant declares there was no evidence his bookkeeper, Melanie Ramsey, was a criminally responsible participant. To the contrary, the uncontested evidence is that Ramsey, under Kilkenny's supervision and at his direction, prepared fraudulent tax forms and other documents that were used in the bank fraud scheme. Ramsey also assisted Kilkenny's bank fraud plan by writing a letter to a bank misrepresenting herself as the regional manager of a financial group and falsely stating that Kilkenny earned a monthly average of $115,000 in commissions. The deliberate deception entailed in drafting such a letter to a financial institution supports the trial court's finding that Ramsey was not an unwitting participant in Kilkenny's fraudulent activities. See Brinkworth, 68 F.3d at 641-42 (finding that an accountant who knowingly prepared fraudulent tax returns was a criminally responsible participant). Thus, the finding that appellant was the supervisor of a criminally responsible participant is not clearly erroneous.

Kilkenny's final point is that the two-level enhancement he received for having derived more than $1 million dollars from a financial institution, U.S.S.G. § 2B1.1(b)(12)(A) (2002) (now codified at U.S.S.G. § 2B1.1(b)(13)(A)), constituted impermissible double-counting because the amount of loss had already been taken into account in determining the offense level under U.S.S.G. § 2B1.1(b)(1)(K). We have previously ruled that

18

the cumulation of the dollar amount enhancement and the financial institution enhancement do not constitute impermissible double-counting because the two enhancements serve different purposes. See United States v. Lauersen, 348 F.3d 329, 343 (2d Cir. 2003), vacated on other grounds by 543 U.S. 1097, 125 S. Ct. 1109, 160 L. Ed. 2d 988 (2005); see also United States v. Campbell, 967 F.2d 20, 25 (2d Cir. 1992) ("[D]ouble counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis."). Although we noted in Lauersen that there is a substantial overlap between the two enhancements that might justify a downward departure in some circumstances, Lauersen, 348 F.3d at 344, any such departure would be discretionary. The district court was well within its discretion in finding that no downward departure was warranted here.

CONCLUSION

Accordingly, for the reasons stated above, this case is remanded to the district court for resentencing in accordance with this opinion.