SUMMARY ORDER
Defendants-Appellants appeal from judgments of conviction following two separate jury trials in the United States District Court for the Eastern District of New York (Ross, J.). Both trials resulted from the investigation of drug smuggling at John F. Kennedy International Airport. In the first trial, Defendants-Appellants Michael Erskine, Priestly Green, and En-glan Younge were charged with conspiring to import five kilograms or more of cocaine and 1,000 kilograms or more of marijuana, and conspiring to possess those drugs with intent to distribute them. Erskine and Green were found guilty on all counts. By a special verdict form, Younge was found guilty of the charged offenses related to cocaine, but not guilty of the charges as they related to marijuana. The district court sentenced Erskine to thirty-six months imprisonment, Green to forty-eight months imprisonment, and Younge to 210 months imprisonment.
In the second trial, Defendants-Appellants Gary Lall and Richard Pitcher were convicted for conspiring to import five or more kilograms of cocaine and conspiring to possess with intent to distribute five kilograms or more of cocaine. Lall was also convicted of two conspiracies: conspiring to import and conspiring to possess with intent to distribute fifty kilograms or more of marijuana. The district court sentenced Lall to concurrent sentences of 210 months imprisonment. Pitcher received concurrent sentences of 120 months imprisonment. We assume the parties’ fa *62 miliarity with the underlying facts and the procedural history of this case.
On appeal, the defendants challenge their convictions and sentencing on numerous grounds.

Variance, Misjoinder, and Prejudicial Spillover Challenges

Erskine and Lall argue that there was a fatal variance between the conspiracies with which they were charged and the conspiracies proven at trial. When a defendant argues, as these two defendants do here, that he is prejudiced by the variance “between the indictment, which alleged a single conspiracy, and the proof at trial, which, at best tended to prove several independent conspiracies,” this Court undertakes a two-part inquiry. United States v. Johansen, 56 F.3d 347, 350 (2d Cir.1995). First, we “must determine whether the government sufficiently proved the conspiracy alleged in the indictment, and that the defendant was a member of that conspiracy.” Id. “Second, if the evidence fails to support such a finding, we must then determine whether the defendant was substantially prejudiced by the variance between the indictment and the proof.” Id. To determine if substantial prejudice occurred under the second prong of the analysis, the court looks to “whether the jury convicted the defendant on evidence unrelated to his own alleged activity.” United States v. Geibel, 369 F.3d 682, 693 (2d Cir.2004) (internal quotations omitted); Johansen, 56 F.3d at 351 (“Even where such a variance exists, however, we reverse a conviction only upon a showing of substantial prejudice, i.e. [,] that the evidence proving the conspiracies in which the defendant did not participate prejudiced the case against him in the conspiracy to which he was a party.” (emphasis in original)). In determining prejudice, this court will consider:
(1) whether the court gave a Pinkerton charge; (2) whether statements of persons not in the conspiracy were used against the defendant; (3) whether there was prejudicial spillover due to a large number of joined defendants; and (4) whether any inflammatory or shocking evidence came in against the defendant.
United States v. McDermott, 245 F.3d 133, 139 (2d Cir.2001). When a defendant is “involved in all the conspiratorial conduct proved at trial, there [is] no prejudicial spillover evidence likely to confuse the jury.” United States v. Williams, 205 F.3d 23, 33 (2d Cir.2000).
As for his specific argument, Erskine contests the district court’s finding that the Barbados scheme developed out of the Guyana scheme. He further contends that the Barbados scheme never developed into a conspiracy. Erskine cannot show that he was prejudiced by any variance stemming from proof of an unrelated conspiracy because he was involved in each of the potentially distinct conspiracies proven at trial. See Williams, 205 F.3d at 33.
The district court’s finding that the two schemes were sufficiently similar to be part of the same importation conspiracy was correct. “[A] single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations.” United States v. Cambindo Valencia, 609 F.2d 603, 625 (2d Cir.1979). The introduction into evidence of the cocaine from the Guyana portion of the scheme could not have prejudiced Erskine because he was involved in that conspiracy by way of his role in the importations from Barbados. Therefore, as to the first prong of the variance inquiry, the requirement to prove a conspiracy and Erskine’s membership in it is satisfied. Even if we were to reach the second step and examine wheth *63 er Erskine was prejudiced by a variance, based on a review of the factors set out in McDermott, there is no prejudice. The district court did not give a Pinkerton charge; the trial involved only four defendants; there was no shocking or inflammatory evidence; and the evidence against Erskine consisted largely of his own statements in intercepted phone calls. See McDermott, 245 F.3d at 139.
For his part, Lall asserts he was prejudiced as a result of: variance between the indictment and the evidence presented at his trial; the joinder of the multiple conspiracies in the indictment; and the introduction of testimony relating to the Adams importation conspiracy that was the focus of the other trial involving Erskine, Green, and Younge. With respect to his variance claim, Lall argues that his right to a fair trial was prejudiced by the evidence of multiple conspiracies introduced at trial that he claims varied from the conspiracies charged in the indictment. The Government charged and proved at trial that Lall was involved with and formed the link between the various conspiracies charged in the indictment. Lall cannot successfully argue prejudice due to evidence introduced pertaining to those different conspiracies. See Williams, 205 F.3d at 33.
Although not specifically presented as a misjoinder argument, Lall also argues that he was prejudiced at trial by the joinder of multiple discrete conspiracies because of the prejudicial spillover of evidence from one charged conspiracy to another. Because Lall did not make a pretrial motion for severance with respect to the superseding indictment, he has not preserved a claim for prejudicial misjoinder of the two main conspiracies charged. See United States v. Green, 561 F.2d 423, 426 (2d Cir.1977) (“[I]t is clear that the failure to move for a severance before trial ... constitutes a waiver.”). Even if the issue had been preserved, Lall cannot show prejudice because the evidence presented at trial tied him to both conspiracies.
Finally, Lall argues that he was prejudiced by the admission of testimony relating to the separate Adams conspiracy. The testimony regarding the Adams conspiracy was admitted with a limiting instruction from the district court specifically instructing the jurors that none of the defendants was involved in the Adams conspiracy. Jurors are presumed to follow limiting instructions. United States v. Becker, 502 F.3d 122, 130 (2d Cir.2007). Nothing in the record overcomes that presumption, and we cannot find that Lall was prejudiced.

Sufficiency of the Evidence Challenges

Green, Erskine, Younge, and Pitcher argue that the Government presented insufficient evidence at trial to prove them involvement in the conspiracies of which they were convicted. “In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden.” United States v. Reifler, 446 F.3d 65, 94 (2d Cir.2006) (quoting United States v. Hamilton, 334 F.3d 170, 179 (2d Cir. 2003)). A conviction will be upheld if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis omitted). In reviewing the sufficiency of the evidence, we must view it “in the light most favorable to the Government and all permissible inferences drawn in the Government’s favor....” United States v. Jackson, 335 F.3d 170, 180 (2d Cir.2003). Further, “ ‘[w]e defer to the jury’s determination of the weight of the evidence and the credibility of the witnesses, and to the jury’s choice of the competing inferences that can be drawn from the evidence.’ ” Reifler, *64 446 F.3d at 94 (quoting United States v. Morrison, 158 F.3d 34, 49 (2d Cir.1998)).
Green asserts that the evidence produced at trial was insufficient to prove he was a member of the conspiracy because he never agreed to participate in the conspiracy and never played any role in the actual importation of drugs. Witness testimony and the intercepted phone calls presented at trial show otherwise. Green agreed to assist Adams with proposed narcotics shipments and sought a fee for his role in the importation. Green’s own post-arrest statements acknowledge he spoke with Adams about diverting bags in Miami. Although the Government did not present evidence of any drugs imported through Green’s position in Miami, it was not necessary to prove that fact as an element of the conspiracy charge. See Salinas v. United States, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (“It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.”); Jackson, 335 F.3d at 182 (“As in all conspiracy cases, the essence of the crime is what the conspirators agreed to do, rather than what they actually did.”). Viewing the evidence in the light most favorable to the Government, we find that the evidence presented would allow a rational juror to find Green guilty of conspiracy. See Jackson, 335 F.3d at 180.
Erskine similarly argues there was insufficient evidence to demonstrate that he joined the conspiracies charged or took any steps to further them. The intercepted phone calls between Adams and Erskine planning importation from different locations provided a sufficient basis for the jury to infer that Erskine knew of the conspiracy and agreed to participate in it. See United States v. Rodriguez, 392 F.3d 539, 545 (2d Cir.2004) (“To sustain a conspiracy conviction, the government must present ‘some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.’ ” (quoting United States v. Morgan, 385 F.3d 196, 206 (2d Cir.2004))). Although the Government did not demonstrate that drugs were imported as a result of Erskine’s cooperation with Adams, such evidence was not necessary to sustain the conspiracy convictions. See Jackson, 335 F.3d at 182. The intercepted conversations and the scope of the Adams importation and distribution conspiracies provided sufficient evidence for the jury reasonably to infer that Erskine was responsible for five kilograms or more of cocaine. See Reifler, 446 F.3d at 94.
Younge also argues that insufficient evidence was introduced at trial to prove he was involved in the conspiracy for which he was charged. Younge’s challenge rear-gues the evidence introduced at trial and the inferences the jury may have drawn from it. We decline to credit his challenge and defer, as we must, to the jury’s determination of competing inferences. Id. Despite differences in the details recalled by the different witnesses, multiple witnesses testified that they saw Younge on the airport tarmac tossing a drug-filled bag into a van, thereby allowing the bag to bypass customs. Evidence was also introduced that showed Younge’s extended involvement in the fish pallet scheme as well as Younge’s knowledge that his operation had joined with Adams’s operation to effect the combined September 2003 shipment.
Pitcher argues that his conviction is not supported by the evidence introduced at *65 trial.[1] We are not persuaded. The audio recordings, Pitcher’s post-arrest statement, and documents recovered from his vehicle provide ample evidence to support the jury’s determination that Pitcher was guilty of the charged offenses. Further, Pitcher contends that the Government introduced insufficient evidence to establish that he was responsible for five kilograms or more of cocaine. In making this argument, Pitcher asserts that Special Agent Flood’s testimony regarding the value of drugs imported into New York was not offered against him. Although the district court provided a limiting instruction with regard to one question answered by Flood, the remainder of Flood’s testimony was admitted against Pitcher. Based on Flood’s testimony regarding the value of a kilogram of cocaine, the fees paid to Mark Sandy and the other coconspirators, and the methods of importation, the jury could reasonably infer that the conspiracy involved five kilograms or more of cocaine. Pitcher’s Challenge to the Consent to Search his Vehicle
Pitcher argues that the district court erred in its findings that he voluntarily consented to the search of his vehicle at the time he was arrested. “This court will not overturn a district court’s determination that there was voluntary consent to a search unless that determination was based on clearly erroneous findings of fact.” United States v. Ansaldi, 372 F.3d 118, 129 (2d Cir.2004). Pitcher makes no showing that he did not consent to the search of his vehicle. His argument is directly rebutted by the testimony of the two agents at the evidentiary hearing, which the lower court found credible. Based on these facts, we cannot find the district court erred in determining that Pitcher consented to the search. The district court’s review of the totality of circumstances confirms that Pitcher’s consent was voluntary.

Younge’s Evidentiary Challenge

Younge argues that the district court erred in admitting evidence of prior uncharged conduct, specifically his involvement in prior drug shipments using the fish pallets. Younge advances a variety of reasons why such evidence was not admissible under the Government’s theory that it demonstrated modus operandi. Those reasons include that the method was copied by another group in the September 2003 shipment, that the evidence at trial had tied him to a different method of importation, and that the Government’s theory of the case had Younge collecting the narcotics based on the information he received rather than planning shipments. “A district court’s decision to admit evidence of prior bad acts is reviewed for abuse of discretion, which we will find only if the judge acted in an arbitrary and irrational manner.” United States v. Lom-bardozzi, 491 F.3d 61, 78-79 (2d Cir.2007). “While Rule 404(b) identifies rationales— notably excluding propensity — for which evidence of bad acts other than those charged in the indictment may be admitted at trial, the rule has no bearing on the admissibility of acts that are part of the charged crime.” United States v. Quinones, 511 F.3d 289, 308 (2d Cir.2007) (emphasis in original, footnote omitted).
The evidence at issue demonstrated the unique method by which Younge imported cocaine on frozen fish pallets sent to a specific Brooklyn restaurant. From that evidence, the jury could have inferred that Adams and his supplier in Guyana gained *66 access to that particular method of importing cocaine only by cooperating with Younge in a single conspiracy. By that reasoning the evidence is admissible under Rule 404(b) as evidence of a modus oper-andi. Although Younge challenges the admission of the evidence under Rule 404(b), when ruling on Younge’s post-trial Rule 29 motion, the district court found the evidence of the prior cocaine shipments hidden in the frozen fish pallets to be direct evidence of the conspiracy charged. We cannot find that the district court abused its discretion in admitting this evidence.

Lall’s Constructive Amendment Challenge

Lall contends that the admission of certain evidence, including, inter alia, Mark Sandy’s testimony about the October 2002 cocaine seizure, resulted in the constructive amendment of the indictment thereby causing him to be convicted of charges not within the scope of the original indictment. “A trial court constructively amends an indictment when it broadens the basis of conviction beyond that charged in the indictment.” Ansaldi, 372 F.3d at 126-27 (citing United States v. Patino, 962 F.2d 263, 265 (2d Cir.1992)). “To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court’s jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury’s indictment.” United States v. Salmonese, 352 F.3d 608, 620 (2d Cir.2003) (quoting United States v. Frank, 156 F.3d 332, 337 (2d Cir.1998)). “There is no constructive amendment ‘where a generally framed indictment encompasses the specific legal theory or evidence used at trial.’ ” United States v. Milstein, 401 F.3d 53, 65 (2d Cir.2005) (quoting Salmonese, 352 F.3d at 620).
The charged importation conspiracy encompassed the membership of the conspiracy beyond Lall and Pitcher and included other coconspirators such as Sandy. Even though Pitcher was not involved in the conspiracy at the time of the October 2002 seizure, this does not require us to find that the October 2002 shipment occurred as part of a different conspiracy. A single conspiracy may be found even when there were changes in membership and when not all of the members conspired with each other. See Valencia, 609 F.2d at 625; United States v. Vanwort, 887 F.2d 375, 383 (2d Cir.1989). Here, the charges in the indictment encompassed the evidence used at trial. Sandy’s testimony and the October 2002 seizure were offered as direct evidence of the importation conspiracy charged. No constructive amendment occurred.

Younge’s Sentencing Challenges

Younge challenges the district court’s findings that he was: (1) a leader or organizer of a criminal scheme, resulting in a 4-level increase to the Guidelines offense level under U.S.S.G. § 3Bl.l(a); and (2) criminally responsible for 124 kilograms of cocaine found in the September 20, 2003 intercepted shipment.
We review for clear error a district court’s finding that a defendant acted in a leadership or organizational role. United States v. Kilkenny, 493 F.3d 122, 130 (2d Cir.2007). At trial, witnesses testified that Younge recruited people into the scheme, paid people for them participation in the scheme, developed the frozen fish pallet shipping method, and discussed going to Guyana to arrange a new shipment method after the September 20, 2003 seizure. The district court’s finding that Younge was a leader or organizer in the scheme was well-supported by evidence at trial. It was not clearly erroneous.
*67 In reviewing the quantity of narcotics for which a defendant is held culpable, we have said that a “defendant need not have actual knowledge of the exact quantity of narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved.” United States v. Snow, 462 F.3d 55, 72 (2d Cir.2006). “Ultimately, the question is whether the conspiracy-wide quantity was within the scope of the criminal activity the defendant agreed to and whether the activity in question was foreseeable to the defendant.” Id. The jury’s finding of guilt established that Younge was a member of the larger Adams conspiracy. Based on that involvement, Younge may be held responsible for the amount of narcotics he “could reasonably have foreseen,” including the entire 180 kilograms of cocaine seized in September 2003. See id. But here, Younge was not sentenced based on the 180 kilograms. The district court agreed with the PSR’s determination that Younge was responsible only for 120 kilograms, having previously noted that “even assuming [Younge] wasn’t fully cognizant of the extra 60 kilos, he was cognizant of his own 120 kilos.” There was no error in that determination.

Lall’s Ineffective Assistance of Counsel Claim

Lall appeals his conviction by claiming ineffective assistance of counsel. This Court has a “baseline aversion to resolving ineffectiveness claims on direct review.” United States v. Khedr, 343 F.3d 96, 99-100 (2d Cir.2003) (citations and internal quotation marks omitted); see also Massa-ro v. United States, 538 U.S. 500, 504-05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (expressing preference that an ineffective counsel claim be evaluated pursuant to a § 2255 motion, rather than on direct appeal). We will, however, entertain ineffective assistance claims on direct appeal when “their resolution is beyond any doubt or to do so would be in the interest of justice.” Khedr, 343 F.3d at 100 (citation and internal quotation marks omitted). In this instance, we believe that Lall’s claim should be heard as part of a § 2255 motion should he opt to file one. Thus we deny his claim of ineffective assistance of counsel without prejudice to his raising it on an appropriate motion for collateral review.
We have considered Defendants’ remaining arguments and find them to be without merit. For the foregoing reasons, we AFFIRM the judgments of the District Court.

. We note that Pitcher’s sufficiency argument with respect to the intercepted phone calls has been withdrawn.