# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: April 16, 2009                    Decided: December 3, 2009)

Docket No. 07-5638-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Rajko Ljutica,

*Plaintiff-Appellant*,

v.

U.S. Attorney General Eric H. Holder, Jr., Secretary Janet A. Napolitano, Department of Homeland Security, Acting Deputy Director Michael Aytes, U.S. Citizenship and Immigration Services, New York District Director Andrea J. Quarantillo, U.S. Citizenship and Immigration Services,[*]

*Defendant-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., Secretary Janet A. Napolitano, and Acting Deputy Director Michael Aytes are automatically substituted as the defendant-appellees in this case. Defendant-appellee Andrea J. Quarantillo is the New York District Director of the U.S. Citizenship and Immigration Services, not the New York Field Office Director as indicated in the original caption. The Clerk of Court is directed to amend the official caption to conform to the listing above.

Before:    JACOBS, *Chief Judge*, LEVAL, and SACK, *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Rakoff, *J.*) granting summary judgment in favor of the Government and affirming the denial by the U.S. Citizenship and Immigration Services ("CIS") of Plaintiff's application for United States citizenship. CIS denied Plaintiff's application on the ground that Plaintiff was statutorily barred from qualifying for naturalization because he was convicted of an "aggravated felony" as defined in 8 U.S.C. §§ 1101(a)(43)(M)(i). On appeal, Plaintiff argues that his conviction of attempted bank fraud under 18 U.S.C. § 1344 does not qualify as an aggravated felony under the immigration statute and that res judicata applies as a result of earlier deportation proceedings. Finding no merit to Plaintiff's arguments, the Court of Appeals (Leval, *J.*) affirms.

WALTER DROBENKO, Drobenko & Associates, P.C., Astoria, New York, for *Appellant*.

PATRICIA L. BUCHANAN, Assistant United States Attorney (Sarah S. Normand, Assistant United States Attorney, *on the brief*), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, for *Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff appeals from an order of the United States District Court for the Southern

District of New York (Rakoff, *J.*) granting summary judgment in favor of the Government.

Plaintiff contended in his suit that, in denying him citizenship, the U.S. Citizenship and

Immigration Services ("CIS") relied on a legally erroneous ground. CIS denied Plaintiff's

application on the ground that Plaintiff's conviction under 18 U.S.C. § 1344 for attempting to

execute a fraudulent scheme to obtain money from a bank constitutes an "aggravated felony" as

defined in 8 U.S.C. §§ 1101(a)(43)(M)(i) and that conviction for an aggravated felony makes one

ineligible for naturalization under 8 U.S.C. §§ 1101(f)(8), 1427(a)(3). On *de novo* review, the district court affirmed, finding that Plaintiff is an aggravated felon as defined in Subsections (M)(i) and (U). On appeal, Plaintiff argues primarily that the statutory bar is inapplicable to his crime because he was convicted of bank fraud rather than attempted bank fraud (rendering Subsection (U) inapplicable) and because the bank suffered no actual loss, as he was caught before he could withdraw the money (rendering Subsection (M)(i) inapplicable). We find Plaintiff's arguments to be without merit.

## BACKGROUND

Plaintiff is a citizen of the Republic of Montenegro who entered the United States as a visitor in October 1987 and adjusted his status to that of permanent resident in November 1988. In December 1993, Plaintiff was convicted of violating 18 U.S.C. §§ 1344 and 2 upon his plea of guilty to attempting to execute a fraudulent scheme to obtain $475,025.25 from Security Pacific National Trust Company ("Security Pacific"). The scheme was detected after the money was wired from Security Pacific to Plaintiff's account at another bank, but before Plaintiff could withdraw it from that account. Plaintiff was sentenced to 16 months imprisonment and two years of supervised release.

As a result of the conviction, the Immigration and Naturalization Service ("INS") charged Plaintiff with deportability under § 241(a)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(A) (recodified at 8 U.S.C. § 1227(a)(2)(A)), as an alien who had been convicted of a crime involving moral turpitude, committed within five years of entry, and

3

sentenced to imprisonment for one year or more. On April 29, 1996, Plaintiff was granted a waiver of deportation under § 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996).

In March 2005, Plaintiff applied to CIS to become a naturalized citizen of the United States. CIS denied Plaintiff's application on the ground that Plaintiff's conviction was for an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(M)(i) and therefore statutorily precluded him from demonstrating "good moral character." On appeal, Defendant-Appellee Andrea J. Quarantillo, CIS's New York District Director, affirmed the denial.

Plaintiff filed a complaint in the United States District Court for the Southern District of New York seeking *de novo* review of his application, arguing that his conviction was not an aggravated felony within the meaning of the relevant statute and that res judicata deriving from his prior deportation proceedings and § 212(c) waiver established his good moral character. Plaintiff and the Government moved for summary judgment.

The district court denied Plaintiff's motion and granted the Government's motion for summary judgment. *Ljutica v. Mukasey*, No. 07 Civ. 6129 (JSR), 2007 WL 4145275, at *1 (S.D.N.Y. Nov. 19, 2007). After reviewing the record of Plaintiff's plea and conviction, the court concluded that, based on "the undisputed facts and clear law, Ljutica is statutorily ineligible for naturalization because he is an aggravated felon and thus barred by 8 U.S.C. § 1101(f) from establishing the good moral character required for naturalization." *Id.* at *2.

This appeal followed.

**DISCUSSION**

We review the district court's grant of a motion for summary judgment *de novo*. *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there are genuine issues of material fact, we "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiff raises two issues on appeal. First, he argues that his conviction under 18 U.S.C. § 1344 does not constitute an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(M)(i) and (U). Second, he argues that his prior deportation proceeding and the resulting § 212(c) waiver preclude the Government from asserting that he lacked good moral character.

**I. Aggravated Felony**

The INA provides that no person shall be naturalized unless he "has been and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). CIS is precluded from finding "good moral character" if the applicant "has been convicted of an aggravated felony (as defined in subsection (a)(43) . . . )." 8 U.S.C. § 1101(f)(8); *see also* 8 C.F.R. § 316.10(b)(1)(ii) ("An applicant shall be found to lack good moral character, if the applicant has been . . . [c]onvicted of an aggravated felony . . . on or after November 29, 1990."); *Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 325 (2d Cir. 2007) ("Under the 1990 amendments to the INA, if a person is 'convicted' of an aggravated felony after the date of enactment of the statute,

5

November 29, 1990, that person is statutorily precluded from establishing the 'good moral character' required for naturalization.").

Section 1101(a)(43) provides in Subsections (A) through (U) a list of offenses that constitute aggravated felonies. Subsection (M)(i) specifies an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Subsection (U) provides that "an attempt or conspiracy to commit an offense described in [Subsections (A) through (T)]" is an aggravated felony. 8 U.S.C. § 1101(a)(43)(U). Accordingly, an attempt to commit a crime that involves fraud or deceit, which, if successful, would have resulted in a loss to the victim exceeding $10,000, is an aggravated felony under the INA.

Plaintiff claims that he was not convicted of attempted bank fraud under 18 U.S.C. § 1344, but was instead convicted of bank fraud, and thus Subsection (U) is inapplicable. He further argues that because he was unable to withdraw the money wired to his account, all of which was returned to the victim of the fraud, there was no permanent "loss to the victim," so that Subsection (M)(i) is inapplicable. We reject his arguments.

**A. Attempted Bank Fraud**

18 U.S.C. § 1344 applies to anyone who "knowingly executes, *or attempts to execute*, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises"

(emphasis added). It is clear that an attempt to defraud a bank can be the basis for a conviction under 18 U.S.C. § 1344.

The record of Plaintiff's conviction[1] indicates that he was convicted of attempted bank fraud. Count Two of the Indictment alleges that Plaintiff "unlawfully, willfully, and knowingly *did attempt* to execute a scheme and artifice to obtain money, funds, credits, assets, securities and other property under the custody of a financial institution, namely, Security Pacific National Trust Company . . . by means of false and fraudulent pretenses" (emphasis added). The Plea Agreement indicates that Plaintiff would plead guilty to Count Two of the Indictment, and states that "the 'loss' figure . . . is $475,025.25, the amount the defendants would have realized had the scheme charged in Count Two been successful." The Judgment of Conviction states that Plaintiff was convicted on his plea of guilty to Count Two. As a defendant who pleads guilty "admits all elements of the formal charge," *United States v. Lasaga*, 328 F.3d 61, 63 (2d Cir. 2003), Plaintiff pleaded guilty to attempted bank fraud.[2]

Relying on *United States v. Kilkenny*, 493 F.3d 122 (2d Cir. 2007), Plaintiff argues that

---

[1]In *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116 (2d Cir. 2007), *abrogated on other grounds by Nijhawan v. Holder*, 129 S. Ct. 2294, 2298, 2302 (2009), we held that the Government must meet its burden of proof in establishing that a conviction is for an aggravated felony based on the "record of conviction," which includes "a charging document (such as an indictment), a signed plea agreement, a verdict or judgment of conviction, a record of the sentence[,] a plea colloquy transcript, and jury instructions." *Id.* at 128-29.

[2]18 U.S.C. § 1344, which defines the crimes of both bank fraud and attempted bank fraud, is entitled "Bank fraud." The fact that the Judgment of Conviction describes the offense of conviction using the words "Bank Fraud" does not alter that Plaintiff was charged with, pleaded to, and was convicted of *attempted* bank fraud.

7

because the money from Security Pacific was wired to his account, the crime was completed and not merely attempted. In *Kilkenny*, we held that the defendant's bank fraud scheme was "executed no later than when he received the funds from his fraudulent loan application," and therefore found error in the district court's treatment of a subsequent failure to repay the loan as conduct that was part of the offense for purposes of determining which version of the Sentencing Guidelines to apply. *Kilkenny*, 493 F.3d at 130.

There is no merit to Plaintiff's argument. Because an attempt to commit a substantive crime is a lesser included offense of that substantive crime, *see United States v. Marin*, 513 F.2d 974, 976 (2d Cir. 1975), the facts that support a conviction for the completed crime also support a conviction for attempt. Regardless of whether Plaintiff might have been convicted of completed fraud, he was charged with, and pleaded to, and was convicted of, attempted bank fraud.

Plaintiff also argues that because he was sentenced under United States Sentencing Guidelines § 2F1.1, rather than § 2X1.1, which covers attempt offenses, he must have been convicted of completed bank fraud rather than an attempt. He is mistaken. While § 2X1.1(b)(1) provides a three-level reduction for "attempt," it explicitly excludes attempts in circumstances where "the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control." U.S.S.G. § 2X1.1(b)(1).

Finally, Plaintiff argues that Subsection (U) is void for vagueness, or, in the alternative,

8

that it is ambiguous and the rule of lenity should apply in interpreting it. These arguments are without merit. Outside the First Amendment context, we assess statutes for vagueness only as applied. *United States v. Rybicki*, 354 F.3d 124, 129-30 (2d Cir. 2003) (en banc). Accordingly, we must determine whether an ordinary person would understand that a conviction for an attempt to execute a scheme to defraud a bank under 18 U.S.C. § 1344 would qualify under Subsection (U) as an "attempt" and whether Subsection (U) could be applied consistently to such convictions by CIS. *See id.* We see no reason why an ordinary person or CIS official would not understand that a conviction for "attempt" under § 1344 qualifies as a conviction for an "attempt" under Subsection (U). We see no ambiguity. As for the rule of lenity, furthermore, "it cannot overcome a reasonable [Board of Immigration Appeals] interpretation entitled to *Chevron* deference." *Mizrahi v. Gonzales*, 492 F.3d 156, 174-75 (2d Cir. 2007). In *Sui v. INS*, 250 F.3d 105 (2d Cir. 2001), we determined that the Board of Immigration Appeals ("BIA") was entitled to *Chevron* deference for its reasonable interpretation of Subsection (U) to incorporate the well-established common law definition of "attempt," namely, the presence of criminal intent and completion of a substantial step toward committing the crime. *Id.* at 115. The rule of lenity has no application here.

**B. Loss Amount**

Plaintiff also argues that Subsection (M)(i) does not apply to his conviction because Security Pacific suffered no actual loss, and therefore the requirement of Subsection (M)(i) that the loss to the victim exceed $10,000 was not met. Because Plaintiff was convicted of *attempted*

9

bank fraud and is an aggravated felon pursuant to Subsection (U) because of an attempt, the amount of actual loss to the bank is irrelevant – all that matters is the intended loss. As the BIA wrote in a comparable case,

> We disagree with the respondent's contention that section 101(a)(43)(U) of the Act requires that the victim suffer an actual loss which exceeds $10,000. By its very nature, an attempt involves an unsuccessful effort to commit a crime. Here, the offense for which the respondent was convicted involved an attempt to obtain $15,000 from the insurance company through fraud and deceit. . . . The fact that the respondent failed to obtain the money is of no consequence under section 101(a)(43)(U) of the Act, which prescribes deportability as an aggravated felon for aliens convicted of an attempt or conspiracy to commit an offense described in section 101(a)(43) of the Act.

*In re Onyido*, 22 I. & N. Dec. 552, 554 (B.I.A. 1999) (citations omitted).

The amount of intended loss is determined by reference to the specific circumstances surrounding the offense at issue, and need not be an element of the offense itself. *See Nijhawan*, 129 S. Ct. at 2300-02. Plaintiff's record of conviction shows that he intended to defraud Security Pacific of well over $10,000. Count Two of the Indictment, to which he pleaded guilty, charges Plaintiff's accomplice with "initiating a fraudulent wire transfer directing [Security Pacific] to transfer approximately $475,025.25 from an account not owned by [Plaintiff or his accomplice] into an account maintained and controlled by [Plaintiff] at another financial institution." This charge is repeated in the Plea Agreement, which also stipulates to a "'loss' figure" of $475,025.25, corresponding to "the amount [Plaintiff] would have realized had the scheme charged in Count Two been successful." *See Nijhawan*, 129 S. Ct. at 2303 (holding in the context

10

of a deportation proceeding that a stipulated loss amount for sentencing purposes supported a finding that the Subsection (M)(i) loss amount was greater than $10,000). Finally, during the plea colloquy, Plaintiff stated: "On April 24, 1990, I went to Manufactures [sic] Hanover and attempted to withdraw $375,000 from an account which contained $475,000 . . . . I knew that this money had been fraudulently transferred to the account." In short, the record shows that the amount Plaintiff intended to obtain through his fraud was well above the Subsection (M)(i) threshold.

**II. Res Judicata**

Finally, Plaintiff asserts that res judicata forecloses a determination that he does not possess good moral character because the Government did not argue that he was an aggravated felon during his earlier deportation proceedings, and because his § 212(c) waiver included a determination that he does have good moral character.

The doctrine of res judicata "provides that a final judgment on the merits bars a subsequent action between the same parties over the same cause of action." *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008); *see also Saud v. Bank of New York*, 929 F.2d 916, 918 (2d Cir. 1991) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (internal quotation marks omitted)). Although the BIA has determined that preclusion principles apply in immigration proceedings, *see Matter of Fedorenko*, 19 I. & N. Dec. 57, 61-64 (B.I.A. 1984), we have not yet answered whether res judicata bars the Government from asserting, in a second

11

immigration proceeding, grounds it could have asserted but did not in a prior proceeding, *see Channer*, 527 F.3d at 280. Even if principles of res judicata do apply generally in such circumstances, however, they do not apply here.

The Government *could not* have argued that Plaintiff was an aggravated felon at the time of his deportation proceeding. Subsection (M)(i) was first enacted on October 25, 1994. *See* Immigration and Nationality Technical Corrections Act of 1994 ("IANTCA"), Pub. L. No. 103-416, § 222(a), 108 Stat. 4305, 4320-22 (1994). At the time of its enactment, Subsection (M)(i) applied only to "convictions entered on or after the date of enactment of this Act." *Id.* § 222(b). It was not until September 30, 1996 that Subsection (M)(i) was amended to apply retroactively. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C., § 321(b), 110 Stat. 3009-628 (1996) ("Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph.").

Plaintiff was convicted in December 1993, before the enactment of IANTCA. Thus, Subsection (M)(i) as enacted in IANTCA did not apply to his prior conviction. His deportation proceedings were completed on April 29, 1996, when he was granted a § 212(c) waiver, before the enactment of IIRIRA. Thus, IIRIRA's retroactive application of Subsection (M)(i) did not apply during his deportation proceedings. Under the principles of res judicata, "while a previous judgment may preclude litigation of claims that arose 'prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have

12

been sued upon in the previous case.'" *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)). Because the Government could not have argued that Plaintiff was an aggravated felon based on his 1993 conviction during his deportation proceedings, res judicata would not preclude its taking that position here. We therefore leave open the question whether res judicata bars the Government from asserting, in a second immigration proceeding, an argument it could have asserted, but did not, in a prior proceeding.

Plaintiff's argument that his good moral character was determined by his § 212(c) waiver also fails. As we observed in *Chan v. Gantner*, 464 F.3d 289 (2d Cir. 2006), "a finding of 'good moral character[]' was not a statutory prerequisite or necessarily a consideration for relief under section 212(c)." *Id.* at 295. "Good moral character" is a defined term under the INA, *see* 8 U.S.C. § 1101(f), and invoked in other sections, but not in § 212(c). Plaintiff correctly points out that one of the factors identified by the BIA to guide the Attorney General's discretion in granting § 212(c) waivers is "other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives)." *Matter of Marin*, 16 I. & N. Dec. 581, 585 (B.I.A. 1978). However, even if a finding of "good character" was implicit in the decision granting Plaintiff a § 212(c) waiver, "good moral character" under § 1101(f) is defined differently from "good character" in reference to a § 212(c) waiver. Plaintiff's conviction of attempted bank fraud was not inconsistent with a finding of "good character" for purposes of his § 212(c) waiver. By virtue of § 1101(f)(8) and Subsections (M)(i) and (U), however, the conviction

13

did preclude a finding of "good moral character" for purposes of his application for citizenship.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.